(No. 55931.—

FIRST NATIONAL BANK AND TRUST COMPANY OF EVANSTON, Trustee, Appellee, v. EDWARD J. ROSEWELL, County Treasurer, *et al.*, Appellants.

*Opinion filed November 18, 1982.—Rehearing denied January 28, 1983.*

Richard M. Daley, State's Attorney, of Chicago (Jane Clark Casey, Deputy State's Attorney, and Thomas J. McNulty, Assistant State's Attorney, of counsel), for appellants.

James A. Rooney, of Chicago, for appellee.

JUSTICE UNDERWOOD delivered the opinion of the court:

Plaintiff, the First National Bank and Trust Company of Evanston, as trustee, brought this action in the Cook County circuit court against County Treasurer Edward J. Rosewell seeking to enjoin the collection of 1978 real estate taxes upon the trust property. Also joined as defendants were the then members of the county board of tax appeals, Harry H. Semrow and Seymour Zaban, against whom a claim for damages under 42 U.S.C. section 1983 (1976) was asserted. The circuit court dismissed the damage action but reduced the assessed valuation of the real estate from $8 million to $3.9 million. The appellate court affirmed (101 Ill. App. 3d 459), and we granted the defendants' petition for leave to appeal.

Plaintiff holds title to certain Evanston real property in trust for American Plaza Associates (hereafter taxpayer), a limited partnership having as its principal asset the 18-story building on the trust property. In mid-1978 when the building was new and still only partially rented, the Cook County assessor notified the taxpayer that the property's assessed value had increased from the 1977 level of $2 million, which was established when the building was under construction, to $8 million. Because the assessment rate was 40%, this indicated that the assessor regarded the building's fair cash market value as approximately $20 million. The taxpayer then sought to persuade the assessor to decrease the assessment, arguing that the assessor usually used an income-capitalization approach when valuing newly constructed buildings and that the taxpayer's building did not produce sufficient income to justify an $8 million assessment. The assessor agreed to a reduction which the taxpayer considered unsatisfactory; accordingly, it submitted further information to the assessor in early November. After reviewing the new financial data, the as-

sessor notified the taxpayer that a new assessed value of $3.4 million had been calculated. The Evanston tax rolls for 1978, however, had been certified to the board of appeals before the assessor substituted the new figure. Once certified, the assessor can no longer change assessments. See Ill. Rev. Stat. 1977, ch. 120, par. 603.

Consequently, and pursuant to section 113 of the Revenue Act of 1939 (Ill. Rev. Stat. 1977, ch. 120, par. 594(1)), the taxpayer then filed a complaint with the board of appeals. The assessor thereafter submitted a recommendation to the board suggesting that the assessment be lowered to $3 million and that the property be reassessed in 1979. The taxpayer's petition to the board, however, included information that the construction cost of the building was approximately $17 million. Additionally, it is undisputed that the property had been mortgaged for some $20 million, and that objections were sustained to a May 1977 letter from a deceased general partner to a major tenant referring to the latter's $25 million offer for the property, and the mortgagee's "intense interest" in purchasing at a $30-32 million figure. Although the board requested an audited financial statement for calendar 1978, it was informed that the taxpayer was audited on a fiscal-year basis, and that an audited calendar-year statement was unavailable. The taxpayer did, however, submit a financial report prepared by an accounting firm. Commissioner Semrow testified that the board, upon considering the conflicting evidence of value, had determined that the taxpayer's evidence was insufficient to justify the conclusion that the certified assessment was incorrect; consequently, the board declined to decrease the assessment.

Instead of pursuing the payment-under-protest tax-objection remedy provided by the statute (Ill. Rev. Stat. 1977, ch. 120, par. 675) the taxpayer paid only $516,000, representing that portion of the taxes it considered fair,

and filed its three-count equitable action. Count I alleged that the board of appeal's decision was constructively fraudulent and constituted a denial of equal protection under both the Federal and State constitutions. It sought an injunction against the collection of any further taxes for 1978. The taxpayer also alleged that it would have to borrow the amount of any unpaid taxes and that requiring it to pay interest on that sum, and to forgo interest in the event that a refund was forthcoming, rendered the legal remedy of payment under protest inadequate. Count II alleged that the decision of commissioners Semrow and Zaban had infringed upon the taxpayer's equal protection rights in violation of 42 U.S.C. sections 1981 and 1983 (1976) and sought both an injunction against any further collection and $100,000 in damages from these two defendants. Count III sought a writ of *certiorari* to the board of appeals, asserting that this was the only way by which the taxpayer could obtain judicial review.

Because we consider the tax-objection route to be an adequate legal remedy in this case, it is unnecessary to consider whether the board of appeal's decision constituted constructive fraud which violated the taxpayer's constitutional rights. This court has consistently held that independent grounds for equitable jurisdiction in cases involving real estate taxes exist only when an unauthorized tax is levied or when exempt property is taxed, neither of which is true here. (See, *e.g.,* *Hoyne Savings & Loan Association v. Hare* (1974), 60 Ill. 2d 84; *Clarendon Associates v. Korzen* (1973), 56 Ill. 2d 101.) In all other situations, equity will assume jurisdiction only when no adequate legal remedy is available. *Hoyne Savings & Loan Association v. Hare* (1974), 60 Ill. 2d 84, *La Salle National Bank v. County of Cook* (1974), 57 Ill. 2d 318; *Clarendon Associates v. Korzen* (1973), 56 Ill. 2d 101; *White v. City of Ottawa* (1925),

318 Ill. 463.

The facts of this case are readily distinguishable from the circumstances which led to the granting of equitable relief in *Hoyne Savings & Loan Association v. Hare* (1974), 60 Ill. 2d 84, upon which plaintiffs rely. Unlike the unusual situation in *Hoyne,* where the 1971 and 1972 assessments were predicated upon nonexistent improvements, the increased assessment in this case followed very substantial improvement in the property. While the plaintiff in *Hoyne* was unaware of the 1971 increased assessment until after the tax rolls had closed, the taxpayer in this case received notice of the 1978 increase long before the assessments were certified. Although equitable intervention was approved as to the 1971 assessment in *Hoyne,* this court held that equitable relief was inappropriate as to the 1972 assessment because the plaintiff knew of the increase long before the 1972 tax bills became due and simply "elected not to pursue the remedy provided by statute." (60 Ill. 2d 84, 91.) The same can be said of the taxpayer in this case.

It is argued that the payment-under-protest tax-objection remedy provided by section 194 of the Revenue Act of 1939 (Ill. Rev. Stat. 1977, ch. 120, par. 675) is inadequate because the taxpayer's principal asset—the property being taxed—did not generate sufficient income to pay the taxes under protest. Alternately, the taxpayer argues that it would have to borrow at high interest rates the money with which to pay. This, without more, is insufficient to render the legal remedy inadequate. Illinois law imposes joint liability, even though limited as to some, for the obligations of the partnership. (Ill. Rev. Stat. 1977, ch. 106½, par. 15(b).) Nothing in the record here indicates that they would be unable to supply the necessary funds. Indeed, Joseph Beale, one of the general partners, testified that one of the limited partners had supplied most of the funds used to pay part of the

1978 tax bill. Moreover, we agree with defendants' suggestion that, if adequacy of the tax-objection remedy turned upon whether the property being taxed produced sufficient income to pay the protested tax, countless equitable actions might well be brought by the owners of vacant lots and other low-income properties to forestall the payment of their taxes. Such circumstances serve only to promote instability in local government finances, since property taxes are a principal source of revenue for local governments. (See Advisory Commission on Intergovernmental Relations, Significant Features of Fiscal Federalism 53, 56, 78 (1980).) As we noted in *Clarendon*, the absence of a requirement that tax objections be accompanied by payments under protest during the depression years resulted in great numbers of people refusing to pay their taxes and filing objections, thus severely impairing the functioning of governmental units. *Clarendon Associates v. Korzen* (1973), 56 Ill. 2d 101, 106.

Nor do we find persuasive the taxpayer's argument that failure to provide interest upon refunded tax payments renders the payment-under-protest remedy inadequate. Although the General Assembly has recently amended the Revenue Act to provide for such interest payments (see Pub. Act 82—598, "An Act to amend Sections 192(a) and 194 of the 'Revenue Act of 1939', filed May 17, 1939, as amended"), that action does not indicate that the remedy was previously inadequate. Indeed, this court has specifically held that the lack of interest on refunded payments did not render the remedy inadequate. (*Clarendon Associates v. Korzen* (1973), 56 Ill. 2d 101; *Lakefront Realty Corp. v. Lorenz* (1960), 19 Ill. 2d 415.) The Supreme Court agreed with that conclusion when it recently overturned a lower court injunction restraining tax collection. *Rosewell v. LaSalle National Bank* (1981), 450 U.S. 503, 67 L. Ed. 2d 464, 101 S. Ct.

1221.

Raised here for the first time is the taxpayer's contention that the failure to provide interest on refunds constitutes a taking in violation of the fifth amendment. In support of this argument, the taxpayer cites the recent decision in *Webb's Fabulous Pharmacies, Inc. v. Beckwith* (1980), 449 U.S. 155, 66 L. Ed. 2d 358, 101 S. Ct. 446, in which the Supreme Court found that a Florida county clerk's failure to refund interest earned on a sum deposited with him pending resolution of an interpleader action constituted an improper taking. Unlike this case, however, *Webb's* involved only private funds, and Florida law provided a separate statutory fee as compensation for the clerk's services. Significantly, the Supreme Court carefully limited its holding to those narrow circumstances and concluded by stating: "We express no view as to the constitutionality of a statute that prescribes a county's retention of interest earned, where the interest would be the only return to the county for services it renders." (449 U.S. 155, 165, 66 L. Ed. 2d 358, 367, 101 S. Ct. 446, 452.) In light of the absence of any service charge in connection with the Revenue Act's remedy of payment under protest (Ill. Rev. Stat. 1977, ch. 120, par. 675), we view the retention of accrued interest as not constitutionally prohibited.

Because of our conclusion that the equitable action was improperly allowed it is unnecessary to address the merits of the taxpayer's civil rights claim in count II, which was brought in equity for the same reasons alleged in count I. We find this court's statement in *La Salle National Bank v. County of Cook* (1974), 57 Ill. 2d 318, 324, particularly apposite: "The legal remedy by way of payment under protest followed by objections to the application for judgment for delinquent taxes provides an adequate remedy at law wherein the alleged ir-

regularities and violations of plaintiffs' constitutional rights may be litigated and, if warranted, relief granted. This court has held that it is proper to raise constitutional questions arising from alleged improper assessments in this manner. *People ex rel. Callahan v. Gulf, Mobile and Ohio R.R. Co.*, 8 Ill. 2d 66, at 69; *People ex rel. Ross v. Chicago, Milwaukee, St. Paul and Pacific R.R. Co.*, 381 Ill. 58, at 61." In a similar section 1983 action, the Supreme Court found the equitable action improper and cited this court, noting: "There is no doubt that the Illinois state-court refund procedure provides the taxpayer with a 'full hearing and judicial determination' at which she may raise any and all constitutional objections to the tax. *LaSalle National Bank v. County of Cook*, 57 Ill. 2d 318, 324, 312 N.E. 2d 252, 255-256 (1974)." (*Rosewell v. LaSalle National Bank* (1981), 450 U.S. 503, 514, 67 L. Ed. 2d 464, 474, 101 S. Ct. 1221, 1229-30.) Accordingly, the taxpayer should have pursued its section 1983 claim in a legal action rather than in equity.

Similarly, this case does not present circumstances appropriate for issuance of a writ of *certiorari*. It has long been established in Illinois that a writ of *certiorari* may not be had when another adequate remedy is available. (*Jacobson v. Gunzburg* (1894), 150 Ill. 135; *Glennon v. Burton* (1893), 144 Ill. 551; *Goodfriend v. Board of Appeals* (1973), 18 Ill. App. 3d 412; *Barden v. Junior College District No. 520* (1971), 132 Ill. App. 2d 1038, *cert. denied* (1972), 406 U.S. 920, 32 L. Ed. 2d 120, 92 S. Ct. 1777. See *Kinsloe v. Pogue* (1904), 213 Ill. 302. See also 7 Ill. L. & Prac. *Certiorari* sec. 6 (1954).) In view of the judicial review afforded the taxpayer in the tax-objection remedy, issuance of the writ of *certiorari* was erroneous.

For the reasons stated above, that portion of the appellate court's decision affirming the trial court's injunc-

tion is reversed. Its affirmance of the dismissal of count II is affirmed. The cause is remanded to the circuit court of Cook County with directions to dismiss the complaint.

*Affirmed in part and reversed in part and remanded, with directions.*