SNAPPY CAR RENTAL, CHICAGO, INC., *et al.*, Plaintiffs-Appellants, v. THE DEPARTMENT OF REVENUE, Defendant-Appellee.

Fourth District   No. 4—86—0080

Opinion filed September 3, 1986.

David T. Lumerman, of Vassen, Vetter & Meives, P.C., of Belleville, for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Jill A. Deutsch, Assistant Attorney General, of Chicago, of counsel), for appellee.

JUSTICE GREEN delivered the opinion of the court:

This case concerns the operation of the Illinois Tax Delinquency Amnesty Act (Act), Public Act 83—1428 (1984 Ill. Laws 3012 *et seq.*), whereby the State provided a certain degree of amnesty to taxpayers who owed taxes to the State for any period ending prior to July 1, 1983. Subject to the exception which is in question in this case, the Act granted amnesty to taxpayers who, during a period between October 1, 1984, and November 30, 1984, paid those taxes plus 50% of the interest which was due. If that were done, the taxpayer was entitled to amnesty from other interest or penalties owed and amnesty from civil or criminal prosecution for the failure to previously pay those taxes. The exception was described in the following paragraph contained in section 3 of the Act:

"Amnesty shall not be granted to taxpayers who are a party to any criminal investigation or to any civil or criminal litigation which is pending in any circuit court or appellate court or the Supreme Court of this State for nonpayment, delinquency or fraud in relation to any State tax imposed by any law of the State of Illinois." 1984 Ill. Laws 3013.

On March 25, 1985, plaintiffs Snappy Car Rental, Chicago, Inc., Snappy Car Rental, Columbus, Inc., and Snappy Car Rental, Inc., filed suit in the circuit court of Sangamon County against defendant, Department of Revenue of the State of Illinois. Plaintiffs alleged that they had executed and filed with defendant prescribed forms seeking amnesty under the Act and had made the required payments of all principal sums due during the period in question together with 50% of the required interest. They alleged that amnesty was nevertheless denied by defendant on the ground that each of the plaintiffs were ineligible for amnesty. The complaint then asserted that defendant's denial of amnesty denied them equal protection rights guaranteed "by the Illinois and United States constitutions." The complaint requested a judgment declaring that plaintiffs were entitled to the

amnesty requested and an injunction prohibiting defendant from imposing penalties on them for nonpayment of those taxes.

Defendant filed a motion for summary judgment which was supported by an uncontradicted affidavit showing that, at the time plaintiffs requested amnesty, they were each parties to pending criminal investigations by the defendant for nonpayment of the taxes which were the subject of the amnesty request and that each of the plaintiffs was aware of the investigations. After a hearing, the court granted summary judgment for defendant as to all plaintiffs on January 14, 1986. Plaintiffs have appealed, contending that the provision of the Act denying amnesty to those under pending criminal investigation is a violation of the tax classification and exemption provision of the Illinois Constitution (Ill. Const. 1970, art. IX, sec. 2) and of the equal protection and procedural due process provisions of the United States Constitution (U.S. Const., amend. XIV). We disagree and affirm.

■ In regard to plaintiffs' claims of violations of article IX, section 2, of the Illinois Constitution, and denials of equal protection, we are concerned with the manner in which plaintiffs, as tardy taxpayers subject to criminal investigation, are classified by the Act. No contention is made that any suspect classification, or one subject to strict scrutiny, is involved. Accordingly, regardless of whether the State-imposed classification is tested by the requirements of article IX, section 2 (*Thorpe v. Mahin* (1969), 43 Ill. 2d 36, 45, 250 N.E.2d 633, 638) or by due process requirements of the Illinois Constitution of 1970 (*Crocker v. Finley* (1984), 99 Ill. 2d 444, 459 N.E.2d 1346), or of the fourteenth amendment (*Reed v. Reed* (1971), 404 U.S. 71, 75-76, 30 L. Ed. 2d 225, 229, 92 S. Ct. 251, 253), the issue is whether the classification has a reasonable basis. This is expressly set forth by article IX, section 2, which states:

> "In any law classifying the subjects or objects of non-property taxes or fees, the classes shall be reasonable and the subjects and objects within each class shall be taxed uniformly. Exemptions, deductions, credits, refunds and other allowances shall be reasonable." Ill. Const. 1970, art. IX, sec. 2.

Plaintiffs contend that they are of the class of taxpayers in general and are being given separate treatment, because they were under criminal investigation. They argue that the mere fact that they were under criminal investigation is not a reasonable ground to treat them differently. We deem a more accurate analysis to be that plaintiffs are admittedly in a class of taxpayers who have failed to pay their taxes as required. The issue then is whether the Act is reason-

able in requiring that they be denied amnesty because they were under criminal investigation while other tardy taxpayers are permitted to receive the amnesty. We conclude that a rational basis for doing so exists.

We recognize that, ordinarily, governmental action that distinguishes between those under governmental investigation for wrongdoing and those who are not is neither fair nor reasonable. Here, however, such distinction is being made within a group, all of whom are admittedly in default on their taxes. The obvious purpose of the Act was to obtain additional revenue from such delinquent taxpayers who were not likely to be otherwise detected. The price the legislature was willing to pay to obtain this added revenue was to generally forego partial interest and certain monetary penalties that could have been imposed. Persons under investigation by the Department were not people whose delinquency would likely have been undetected. Thus, a rational basis, and one having a reasonable relationship to the purposes of the Act, would have existed to have excluded from amnesty all persons under departmental investigation, civil or criminal. See *Fiorito v. Jones* (1968), 39 Ill. 2d 531, 536, 236 N.E.2d 698, 702.

■ A rational basis also existed for the decision of the General Assembly to deny amnesty only to those under criminal investigation. The General Assembly could reasonably have concluded that even among taxpayers whose likely default had been detected, the advantages of obtaining the principal debt plus partial interest outweighed the advantages of attempting to make full collection of principal, interest, and penalties as long as crime was not suspected. On the other hand, the legislature could have concluded that if the likelihood of crime were involved, the public interest required that amnesty be denied. Under those circumstances, persons and entities such as plaintiffs were placed in no different position than the vast majority of taxpayers who were required to pay their taxes or to suffer the monetary penalties, and who were subject to criminal prosecution upon a showing of probable cause and criminal conviction upon proof of their guilt beyond a reasonable doubt.

The portion of the Act denying amnesty to those under criminal investigation conforms to equal protection requirements of the fourteenth amendment and article I, section 2, of the Illinois Constitution and to the requirements of article IX, section 2.

■ The interests protected by due process are those of life, liberty, and property, and in order to show a deprivation of due process, a party must establish the existence of a protectable right.

(*Board of Regents v. Roth* (1972), 408 U.S. 564, 569, 33 L. Ed. 2d 548, 556, 92 S. Ct. 2701, 2705.) Plaintiffs contend that they have a property right in being granted amnesty upon their payment of the full amount of taxes due plus 50% of accrued interest. We need not examine this question, because we conclude that even if they had a property right, they were not denied procedural due process.

■ The United States Supreme Court has listed three factors which are of major significance in determining whether procedural due process is afforded in administrative proceedings. They are: (1) private interests that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved in the physical and administrative burden that the additional or substitute procedural requirement would entail. *Mathews v. Eldridge* (1976), 424 U.S. 319, 335, 47 L. Ed. 2d 18, 33, 96 S. Ct. 893, 903.

■ Under the terms of the statute, the only issues to be resolved in regard to whether a taxpayer is entitled to amnesty are the questions of whether (1) the taxes were owed for the period covered by the Act; (2) the delinquent taxpayer had paid those taxes together with 50% of the accrued interest; and (3) the taxpayer was not under criminal investigation in regard to the taxes in question at the time of the payment. Plaintiffs contend that they are entitled to have an administrative determination as to whether they should have been under criminal investigation. We do not agree. As we have previously stated, a taxpayer seeking amnesty is admittedly in default on its taxes. We have held that under these circumstances, the mere fact that the State might have decided to investigate the taxpayer for a criminal violation is a reasonable basis for denying exemption. The motive or good faith of the Department is not in issue.

The situation here differs markedly from that in *Speiser v. Randall* (1958), 357 U.S. 513, 2 L. Ed. 2d 1460, 78 S. Ct. 1332, relied upon by plaintiffs. There, the California Constitution granted a property tax exemption for veterans but also provided that persons who advocated the overthrow of the government or who supported a foreign government against that of the United States in time of hostility could have no exemption. Implementing legislation required those veterans seeking exemption to take a loyalty oath and file it with their local assessor. The legislation also authorized the assessor to examine witnesses and to make a determination as to whether the veteran was loyal. Then, to overturn a denial of exemption by the

assessor, the veteran was required to take judicial action to prove that the assessor's determination was wrong. The United States Supreme Court held this statutory procedure denied due process, because it placed the burden on the veteran to establish his eligibility for the exemption.

■ In *Speiser*, the first amendment rights of the veteran were involved in a decision on a complicated and sensitive question of his advocacy of certain doctrines. Here, no first amendment rights are involved, and the question of eligibility for amnesty is a very simple one. The risk of erroneous deprivation is remote. Although the Act does not provide for any administrative procedure, various provisions of the Act creating the liability for the taxes involved permit taxpayers to pay in full the amount of taxes claimed and then seek a refund. (See Ill. Rev. Stat. 1983, ch. 120, pars. 9—907, 9—908, 439.20, 439.109, 439.117, 445b.) The question of whether the taxpayer was entitled to amnesty could be administratively determined by use of those administrative procedures.

If no other remedy is available, a decision as to the propriety of a denial of amnesty can often be obtained by filing a petition in the circuit court in common law *certiorari* and requiring the Department to send to the court a record of the documents upon which the denial of amnesty was based. See *First National Bank & Trust Co. v. Rosewell* (1982), 93 Ill. 2d 388, 444 N.E.2d 126; *Nowicki v. Evanston Fair Housing Review Board* (1975), 62 Ill. 2d 11, 338 N.E.2d 186.

The Act meets constitutional muster in regard to procedural due process as well as equal protection and the requirements of article IX, section 2. Accordingly, we affirm the judgment of the circuit court granting a summary judgment to defendant.

Affirmed.

McCULLOUGH, P.J., and MORTHLAND, J., concur.