THE CITY OF WOOD DALE, Plaintiff-Appellant, v. THE ILLINOIS STATE LABOR RELATIONS BOARD *et al.*, Defendants-Appellees.

Fourth District   No. 4—87—0199

Opinion filed March 1, 1988.

Michael J. Duggan, of Klein, Thorpe & Jenkins, Ltd., of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Bret A. Rappaport, Assistant Attorney General, of Chicago, of counsel), for appellee Illinois State Labor Relations Board.

Marvin Sacks and Joel S. Hymen, both of Chicago, for appellee Local 714, International Brotherhood of Teamsters.

JUSTICE KNECHT delivered the opinion of the court:

Plaintiff, the city of Wood Dale (city), appeals the dismissal of its petition seeking administrative review, by way of a writ of *certiorari*, of an opinion and direction of election issued by the Illinois State Labor Relations Board (Board). The contested opinion certified a group of police officers and detectives employed by the city as an appropriate unit for collective-bargaining representation. We affirm.

Several issues relating to the trial court's jurisdiction to administratively review this matter are raised on appeal. We are to decide: (1) whether an opinion of the Board which designates an appropriate collective-bargaining unit and directs that an election be held to determine representative status is a final order of the Board; (2) whether a unit-representation decision of the Board is directly reviewable in the courts by writ of *certiorari*; and (3) whether the Board's opinion was an unlawful exercise of its delegated authority, thereby subjecting the decision to direct review in the circuit courts.

On February 19, 1986, the defendant Machinery, Scrap Iron, Metal and Steel, Chauffeurs, Warehousemen, Handlers, Alloy Fabrica-

tors, Theatrical, Exposition, Convention and Trade Show Employees Union, Local 714, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America (union), filed a petition pursuant to the Illinois Public Labor Relations Act (Act) (Ill. Rev. Stat. 1985, ch. 48, par. 1601 *et seq.*) seeking to represent certain patrolmen, detectives, and assistant watch commanders employed by the city of Wood Dale. A hearing on the petition was held May 1, 1986, at which time the parties gave evidence and testimony. A hearing officer of the Board on June 18, 1986, issued a recommended decision and direction of election including within a proposed bargaining unit all full-time sworn police officers, assistant shift commanders and detectives below the rank of sergeant as requested by the union. A secret ballot election was to be conducted to determine if the eligible employees wished to have the union act as their collective-bargaining representative.

Timely exceptions were filed by the city seeking review before the full Board of the hearing officer's recommended findings. The city contested the hearing officer's determinations that: (1) the detectives are not confidential employees as that term is defined in section 3(c) of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 1603(c)), and thus may be included in a bargaining unit; and (2) that an appropriate unit for collective-bargaining purposes under the criteria expressed in the Act would include those detectives.

On September 5, 1986, the Board rendered its decision adopting the recommendation of the hearing officer as its own order. The Board specifically directed the eligible employees be afforded the opportunity to vote between representation by the union and no representation at all.

The election was conducted as scheduled on September 26, 1986. That same day, the city filed in the circuit court of Sangamon County its two-count petition for a writ of *certiorari* requesting judicial review of the Board's unit-determination decision. The petition in count I prayed that all further actions before the Board in this matter be stayed. The city later filed a motion for a preliminary injunction for that same purpose. (Count II of the petition, which asked that certain provisions of the Act be declared unconstitutional, is not a part of this appeal.) Subsequently both the union and the Board filed motions to dismiss.

In the interim, the results of the September 26, 1986, employee election favorably choosing the union as representative were presented to the Board. On October 7, 1986, the Board, in recognition of the election results, certified the union as the exclusive bargaining

representative for the designated employees. The dispute did not end there, however. On November 10, 1986, the union filed an unfair labor practice charge against the city premised on a refusal to bargain with the recognized representative of the employee unit found appropriate by the Board. The Board on November 24, 1986, issued a complaint for hearing on these allegations, to which the city answered, raising as an affirmative defense whether the unit compositions were correctly determined. These unfair labor charge proceedings are not before us.

Returning to the specifics of this case, on February 26, 1986, the circuit court issued its order granting the defendants' motions to dismiss. The court ruled, *inter alia*, it was the intent of the General Assembly that a proceeding under section 11 of the Act regarding how the Board may deal with unfair labor practices (Ill. Rev. Stat. 1985, ch. 48, par. 1611) is the exclusive means to judicially review bargaining unit determinations made pursuant to section 9 (Ill. Rev. Stat. 1985, ch. 48, par. 1609) because section 11 contains the only provision in the Act specifically allowing for administrative review. The city's timely appeal disputes this holding.

There is some indication in the record the unfair labor practice charge levied against the city was resolved against it by a Board order entered April 22, 1987. We have before us a notice of appeal filed May 27, 1987, by the city in the Illinois Appellate Court for the Second District requesting review of the Board's final order that the city committed an unfair labor practice for refusal to bargain. (*City of Wood Dale v. Illinois State Labor Relations Board* (1988), 165 Ill. App. 3d 640.) The propriety of the Board's earlier unit-certification determination is also raised as an issue in that notice.

While the substantive merits of the Board's unit determination are ultimately contested in this case, this appeal nevertheless tests only the circuit court's order dismissing the petition for writ of *certiorari*. We are only concerned with whether dismissal under the circumstances was appropriate. Were we to conclude it was not, the matter would be remanded or otherwise transferred for further proceedings.

■ Only a final administrative decision is subject to administrative review in our courts. (*Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350, 326 N.E.2d 737; *Danison v. Paley* (1976), 41 Ill. App. 3d 1033, 355 N.E.2d 230.) Determinations of finality, and therefore of the court's subject matter jurisdiction to hear the matter, are specifically challenged here.

Under the version of the Act in effect at the time, only section 11, which sets forth the procedures by which the Board may deal with un-

fair labor practices, expressly provides for review under the Administrative Review Law. (Ill. Rev. Stat. 1985, ch. 48, par. 1611(e); see Ill. Rev. Stat. 1985, ch. 110, par. 3—101 *et seq.*) Section 9, detailing union certification and election procedures (Ill. Rev. Stat. 1985, ch. 48, par. 1609), is silent as to any method of seeking judicial review. The Board argued successfully before the trial court that, according to this statutory scheme, final orders of the Board subject to administrative review are only issued upon the termination of unfair labor practice cases under section 11. At that point all contested Board determinations leading up to that final order, including any prior rulings on the appropriateness of a bargaining unit, may be addressed in the courts.

Accepting without necessarily conceding this argument, the city asserts if indeed there is no express provision for administrative review of representation and certification proceedings under section 9, then resort may still be had to the common law writ of *certiorari*. In any event, the city portrays the Board's inclusion of detectives within the bargaining unit as an unlawful act in excess of the Board's delegated authority which may be challenged directly in the circuit court.

The union does not attack these theories on appeal. It instead contends review was prematurely sought when the city filed its petition after the opinion and direction of election was rendered, but before the actual election results were made known, and before the Union was certified by the Board as the officially recognized and exclusive collective-bargaining representative for the unit of public employees designated appropriate.

We consider first the overall unit-representation process under the Act. Pursuant to section 9(a)(1), a petition may be filed before the Board by any labor organization seeking to act on behalf of a group of public employees as their recognized collective-bargaining representative. (Ill. Rev. Stat. 1985, ch. 48, par. 1609(a)(1).) The Board must decide in each individual case, concurrent with its duty "to assure public employees the fullest freedom in exercising the rights guaranteed by this Act," whether a unit containing such employees is appropriate. (Ill. Rev. Stat. 1985, ch. 48, par. 1609(b).) In order that it may accomplish its objectives and duties as prescribed under the Act, the Board is given general authority to hold hearings, consider testimony and require the submission of evidence on any matter under inquiry. (Ill. Rev. Stat. 1985, ch. 48, par. 1605(f).) Where after a hearing the Board decides the composition of an appropriate unit, and in those instances when a public employer does not voluntarily recognize a labor organization as an exclusive bargaining representative for that unit, the Board shall determine the majority representative after a secret ballot

election is conducted among the public employees sought to be represented. (Ill. Rev. Stat. 1985, ch. 48, par. 1609(d); see also Ill. Rev. Stat. 1985, ch. 48, par. 1605(g).) "When the Board has determined that a labor organization has been fairly and freely chosen by a majority of employees in an appropriate unit, it shall certify such organization as the exclusive representative." Ill. Rev. Stat. 1985, ch. 48, par. 1609(d).

Board recognition of an exclusive bargaining representative thus involves a two-step process. First, the Board must determine the appropriateness of the proposed bargaining unit under the standards enumerated in section 9(b) of the Act. (Ill. Rev. Stat. 1985, ch. 48, par. 1609(b).) Once accomplished, that "appropriate" group of public employees subject to potential inclusion in the unit is afforded the opportunity to vote on whether they wish to be represented by a labor organization. If a majority so votes, the Board shall then certify the chosen labor organization as the recognized bargaining representative for that particular unit of public employees.

Here, the Board issued its opinion and direction of election on September 5, 1986, adopting the hearing officer's findings that an appropriate unit under section 9(b) (Ill. Rev. Stat. 1985, ch. 48, par. 1609(b)) would include the police department detectives. The opinion then expressly directed a secret ballot election be conducted among the eligible employees to determine representative status.

On September 26, 1986, the date the election was to be held, the city filed its petition for a writ of *certiorari* in the circuit court. The pleadings in the record by way of the city's own motion for a preliminary injunction reveal the Board on October 7, 1986, issued a certification of representation certifying the union as the exclusive bargaining representative of the unit as proposed.

■ The union asks the specific question of whether an appeal may be directly taken to the courts following an administrative determination of an appropriate bargaining unit entered prior to official certification after election. We find the unit-recognition process under section 9 is not complete until certification after an election, as only then will the representative status be finalized.

Again, designation of an appropriate bargaining unit is but one step in the process of certifying a bargaining agent with whom the employer is obligated to enter discussions concerning conditions of employment. Direct appeal from such an initial administrative determination—assuming *arguendo* separate judicial review may be undertaken within the unit-recognition proceedings under section 9 and judicial review was requested at this point—would be more interlocutory

in nature. Several other actions are necessary to complete the overall recognition process. For example, if the employees vote for no representation whatsoever, the previous designation of what constituted an appropriate unit would be of no effect. The election results or ballot procedure itself may likewise be attacked before the administrative agency prior to a final certification of representation. An order cannot be final if jurisdiction is retained to determine matters of controversy in the future. A final order is one which disposes of all issues between the parties. We believe certification after a valid election represents the completion of the administrative process regarding recognition of an appropriate bargaining unit under section 9.

This view is in accord with the majority of jurisdictions which have held, in construing their own applicable State statutes, an agency opinion determining the composition of an appropriate bargaining unit and directing an election be held among those employees is not a final agency action amenable to judicial review if undertaken before the election results are certified. (See, *e.g.*, *Panama City v. Florida Public Employee Relations Comm'n* (Fla. App. 1976), 333 So. 2d 470, 92 L.R.R.M. 3423; *South Bend Federation of Teachers v. National Education Association—South Bend* (1979), 180 Ind. App. 299, 389 N.E.2d 23, 102 L.R.R.M. 2007; *Harrison v. Labor Relations Comm'n* (1973), 363 Mass. 548, 296 N.E.2d 196, 83 L.R.R.M. 3063; *Lincoln County Memorial Hospital v. Missouri State Board of Mediation* (Mo. App. 1977), 549 S.W.2d 665, 95 L.R.R.M. 3110; *Klamath County v. Laborers International Union of North America, Local No. 915* (1975), 21 Or. App. 281, 534 P.2d 1169, 89 L.R.R.M. 2746; *Renton Education Association v. Washington State Public Employment Relations Comm'n* (1979), 24 Wash. App. 476, 603 P.2d 1271, 103 L.R.R.M. 2453; but see *Civil Service Employees Association v. Helsby* (1969), 31 App. Div. 2d 325, 297 N.Y.S.2d 813, 70 L.R.R.M. 3273, *aff'd* (1969), 24 N.Y.2d 993, 302 N.Y.S.2d 822, 250 N.E.2d 230, 71 L.R.R.M. 2319 (administrative determination of appropriate bargaining unit does constitute a final order subject to immediate and separate judicial review).) Otherwise, allowance of piecemeal appeals in the courts would impose significant and unnecessary delays within the agency certification process, particularly where a public employer may seek to stay the election by way, for example, of a motion for a preliminary injunction or a stay of the proceedings.

The city calls to our attention the administrative decision entered in *City of East St. Louis (Public Library)*, 3 Pub. Employee Rep. (Ill.) par. 2015, case No. S—CA—87—20 (Illinois State Labor Relations Board, January 12, 1987), where the Board held an employer was pre-

cluded from raising as a defense to unfair labor practice charges issues already adjudicated in a prior representation hearing before that same agency. (See also *City of Wood Dale,* 3 Pub. Employee Rep. (Ill.) par. 2036, case No. S—CA—87—43 (Illinois State Labor Relations Board, April 22, 1987), *aff'd City of Wood Dale v. Illinois State Labor Relations Board* (1988), 165 Ill. App. 3d 640; *Kane County Sheriff,* 3 Pub. Employee Rep. (Ill.) par. 2016, case No. S—CA—87—11 (Illinois State Labor Relations Board, Jan. 14, 1987), *aff'd County of Kane v. Illinois State Labor Relations Board* (1988), 165 Ill. App. 3d 614.) From this the city suggests the Board itself regards its decisions on the composition of an appropriate bargaining unit as a final Board determination. However, there is a significant distinction between what may be appealed within an agency structure itself during different stages of the proceedings and questions of finality for purposes of administrative review in the *courts.*

Although we have expressed our opinion, we need not determine the controversy before us on this basis. The record sufficiently indicates the union was in fact certified by the Board after an election was held. The complaint for a hearing on an unfair labor practice charge for refusal to bargain brought against the city on November 24, 1986, states the union was certified as the exclusive bargaining representative for the precise unit of employees whose appropriateness is now contested by the city. These facts were likewise presented to the trial court before it rendered its dismissal order of February 23, 1987. Thus the representation proceedings reached their ultimate and final conclusion prior to the time the court below dismissed the petition. In the interest of judicial economy, we elect to consider this matter further on appeal.

Our analysis moves on to a review of the pertinent statutory provisions of the Act. The Board is generally empowered to regulate labor relations and collective-bargaining matters between public employers, public employees, and labor organizations. The Board's regulatory authority arises in two basic areas: representation and certification matters and unfair labor practices cases. Again, section 9 sets forth procedures for the election and recognition of collective-bargaining representatives, but contains no express reference to review of those determinations. Section 10 describes the various categories of unfair labor practices, including an employer's refusal to bargain collectively with the exclusive bargaining representative for public employees. (Ill. Rev. Stat. 1985, ch. 48, par. 1610.) Section 11 specifies the manner in which the Board may deal with unfair labor practice charges. (Ill. Rev. Stat. 1985, ch. 48, par. 1611.) Of these sections, only the latter

provides for administrative review of a Board's final order. Subsection 11(e) specifically states:

> "A charging party or any person aggrieved by a *final order* of the Board * * * may apply for and obtain judicial review of an order of the Board entered under this Act, in accordance with the provisions of the Administrative Review Law, as now or hereafter amended, except that such judicial review shall be afforded directly in the appellate court for the district in which the aggrieved party resides or transacts business." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 48, par. 1611(e).

The gist of the city's position is that, assuming a decision determining the certification of a representative bargaining unit is not reviewable under the Administrative Review Law because section 9 contains no provision expressly adopting it, then the common law writ of *certiorari* is available to otherwise obtain judicial review of a unit representation decision.

■ Prior to enactment of the Administrative Review Law (Review Law) (Ill. Rev. Stat. 1985, ch. 110, par. 3—101 *et seq.*) review of agency decisions was undertaken by various common law methods, including by *mandamus, certiorari,* or injunctive relief. (*Quinlan & Tyson, Inc. v. City of Evanston* (1975), 25 Ill. App. 3d 879, 883, 324 N.E.2d 65, 69.) The Review Law, however, was enacted to provide for a single uniform method to judicially review the decisions of most administrative agencies of State government. (*Moline Tool Co. v. Department of Revenue* (1951), 410 Ill. 35, 37, 101 N.E.2d 71, 73.) The Review Law was not intended to change or expand the subject matter jurisdiction of courts in administrative review cases; it merely provided a single vehicle for its exercise.

■ The Review Law is applicable only when expressly adopted by the act creating or conferring power on the agency involved. (Ill. Rev. Stat. 1985, ch. 110, par. 3—102; *Wilkins v. Department of Public Aid* (1972), 51 Ill. 2d 88, 280 N.E.2d 706.) Where the enabling statute of an administrative agency provides judicial review will be accomplished according to the Review Law, the use of preexisting methods to secure judicial review is prohibited, and the Review Law itself is the exclusive means of review. (*People ex rel. Chicago & North Western Ry. Co. v. Hulman* (1964), 31 Ill. 2d 166, 167, 201 N.E.2d 103, 105.) On the other hand, if the statute creating or conferring power on an administrative agency does not contain an express reference to the Review Law, then common law *certiorari* will survive as a general method to obtain judicial review of the final actions of agencies and tribunals exercising quasi-judicial administrative functions. *Smith v.*

*Department of Public Aid* (1977), 67 Ill. 2d 529, 541, 367 N.E.2d 1286, 1292; *National Marine Service, Inc. v. Environmental Protection Agency* (1983), 120 Ill. App. 3d 198, 210, 458 N.E.2d 551, 558-59.

■■ The General Assembly by its omission of a review provision in section 9 did not intend for administrative review of a final Board decision to progress by two separate routes—one according to statute and one which existed under the common law—depending on which of the Board's two primary functions are involved. The Review Law, when it is specifically adopted, supplants the various common law methods of seeking review of an administrative decision. Section 11(e) of the Act provides an aggrieved party may undertake judicial review of any "final order" of the Board in accordance with the Administrative Review Law. (Ill. Rev. Stat. 1985, ch. 48, par. 1611(e).) The Review Law itself only governs final administrative agency decisions (Ill. Rev. Stat. 1985, ch. 110, par. 3—102), which are defined as an agency determination affecting "the legal rights, duties or privileges of [the] parties and which *terminates the proceedings before the administrative agency.*" (Emphasis added.) Ill. Rev. Stat. 1985, ch. 110, par. 3—101.

There are only two views as to what constitutes a "final order" of the Board: (1) a final order arises out of either the representation proceeding or the unfair labor practice charge, or (2) it exists only after the latter is completed, at which time issues concerning the former may also be raised. Should a "final order" of the Board also arise from the representation issue under section 9 (see *Laborer's International Union of North America, Local 1280 v. Illinois State Labor Relations Board* (1987), 154 Ill. App. 3d 1045, 507 N.E.2d 1200), then review of a unit determination is exclusively within the purview of the Review Law, and must be accomplished accordingly. *Certiorari* would not be available. On the other hand, were Illinois to follow the Federal approach, a "final order" arises solely out of the unfair labor practice charge, at which time judicial review of the underlying unit determination could also be had in accordance with the Administrative Review Law. (See *American Federation of Labor v. NLRB* (1940), 308 U.S. 401, 84 L. Ed. 347, 60 S. Ct. 300.) Under the Labor Management Relations Act of 1947 (LMRA) (29 U.S.C. §141 *et seq.*) as interpreted by the United States Supreme Court, decisions and directions of elections in unit representation cases are not final orders of the Board. Review of issues raised in representation proceedings may only be obtained by refusing to bargain, and then asserting these issues as a defense to a subsequent unfair labor practice charge. *Magnesium Casting Co. v. NLRB* (1971), 401 U.S. 137, 27 L. Ed. 2d 735,

91 S. Ct. 599; II C. Morris, The Developing Labor Law 1696 (2d ed. 1983).

■ Under either of these approaches, the Review Law as adopted would be the exclusive means of judicial review. Granted, the position of the language adopting the Review Law may properly be considered (*Foster v. Board of Fire & Police Commissioners* (1980), 81 Ill. App. 3d 48, 400 N.E.2d 1089), but it is also the meaning of the adopting language which is decisive (*Mason v. Board of Trustees* (1984), 125 Ill. App. 3d 614, 618, 466 N.E.2d 365, 368). Section 11(e) adopts the Review Law for "final orders" of the Board, of which there are only two possible interpretations. We find *certiorari* equally inapplicable to either. Issuance of the common law writ of *certiorari* cannot be had where another adequate remedy is available. (*First National Bank & Trust Co. v. Rosewell* (1982), 93 Ill. 2d 388, 396, 444 N.E.2d 126, 130, cert. denied (1983), 464 U.S. 803, 78 L. Ed. 2d 70, 104 S. Ct. 50.) It is untenable that our legislature would have wished for some form of bifurcated means of appealing administrative decisions. Were we to accept the city's theory, we would condone a race to the courthouse at two different stages of the proceedings by two different means, thereby undermining the authority of the Board.

The city nevertheless believes a "class of unreviewable administrative decisions" is judicially created by not allowing section 9 representation proceedings to be reviewed in the circuit court by way of common law writ of *certiorari*, where that section contains no express mechanism for review, and where the Act provides for judicial review only within the structure of section 11. The city further maintains as a public body it should not be forced to submit itself to the adverse public reaction and stigmatizing effect of taking a technical unfair labor practice charge in order to judicially challenge an underlying unit-determination proceeding. In support, the city urges the Illinois Act cannot be interpreted similar to the LMRA (29 U.S.C. §141 et seq. (1982)), because the latter has a far more extensive legislative history from which to find a legislative intent that administrative review may be sought solely after an unfair labor practice determination. Likewise, the Federal statutory scheme contains a provision specifically directing that the record of certification proceedings be included with the entire record to be reviewed by a court in a subsequent unfair labor practice decision (29 U.S.C. §159(d) (1982)); the Illinois Act contains no comparable provision to this effect. The city correctly notes the United States Supreme Court, in ruling NLRB orders entered during certification proceedings are not directly reviewable in the courts, has expressly relied upon congressional choice and the

terms of section 9(d) of the LMRA in reaching its conclusion. *American Federation of Labor v. NLRB* (1940), 308 U.S. 401, 409, 84 L. Ed. 347, 352, 60 S. Ct. 300, 304.

The Fifth District has taken the same position advanced here by the city: as the Illinois statute does not contain a provision similar to section 9(d) of the LMRA, the court found our legislature intended to achieve a result different from that announced by decisions of the Federal courts. (*Laborer's International Union of North America, Local 1280 v. Illinois State Labor Relations Board* (1987), 154 Ill. App. 3d 1045, 507 N.E.2d 1200, *appeal denied* (1987), 116 Ill. 2d 559.) Thus, the Fifth District held representation decisions under section 9 are directly reviewable in the courts pursuant to section 11(e) as a "final order" of the Board.

The court's discussion in *Laborer's International* concerning the reviewability (and finality) of section 9 proceedings may not have been entirely necessary, as that appeal arose from a decision of the Board which dismissed a representation petition filed by a *union* seeking representative status. Upon the dismissal of the petition the union in that case had no other means at its disposal to seek review in the courts. The case therefore recognizes a right of action in a limited and exceptional category of cases.

Moreover, we note that although the Illinois Public Labor Relations Act does not contain the specific language of section 9(d) of the LMRA, the Illinois Act does, first, incorporate the provisions of administrative review law, which mandate inclusion of the entire record of proceedings under review as part of the record on appeal (Ill. Rev. Stat. 1985, ch. 110, par. 3—108(b)). Second, the rules and regulations of the Board provide that hearings, including representation hearings or hearings before the Board, as provided for in sections 1210.100(g), (h), and 1210.150(d) (80 Ill. Adm. Code 1210.100(g), (h), 1210.150(d) (Supp. Jan. 1, 1986)), "shall be recorded by stenographic or other means which adequately preserves the record. The hearing officer or the Board may order that the recording be transcribed. Parties may order transcripts and shall bear the costs of any transcripts that they order" (Ill. Adm. Code 1200.50 (Supp. Jan. 1, 1986)). Third, Supreme Court Rule 323 (107 Ill. 2d R. 323) requires the appellant to provide a complete record by which the issues raised may be decided by a court of review. Thus, the failure of the Illinois Act to incorporate the specific language of section 9(d) of the LMRA is a distinction without merit.

The Board argues for following the Federal view in interpreting the LMRA, citing as support for this view a decision of the Second

District Appellate Court which was, however, withdrawn. The effect of withdrawal of a reviewing court's disposition is to render it as if it never existed. For this reason, we have not considered it. The second opinion filed, on consolidating appeals involving both an unfair labor practice case and a representation case before that court (see *City of Rockford v. Illinois State Labor Relations Board* (1987), 158 Ill. App. 3d 166, 169, 512 N.E.2d 100, 102, *appeal denied* (1987), 117 Ill. 2d 542), did not address this issue.

■ We need not decide, however, whether the Federal approach or that taken in *Laborer's International* is correct, because under either approach the circuit court's dismissal of the petition was appropriate. If only an unfair labor practice determination is a final order reviewable in the appellate courts pursuant to section 11(e), then that is the exclusive remedy under the statutory scheme. A public employer who wishes to contest a previous unit certification by the Board must refuse to bargain and assert its position by way of a defense to the unfair labor practice charge proceeding and subsequently on judicial review, similar to the Federal approach. See *Boire v. Greyhound Corp.* (1964), 376 U.S. 473, 11 L. Ed. 2d 849, 84 S. Ct. 894; *Morello v. Federal Barge Lines, Inc.* (8th Cir. 1984), 746 F.2d 1347, 117 L.R.R.M. 2877.

However, should a "final order" under section 11(e) include either a representation decision under section 9 *or* an unfair labor practice case, section 11(e) further directs "judicial review shall be afforded *directly in the appellate court for the district in which the aggrieved party resides or transacts business*." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 48, par. 1611(e).) We take notice the city of Wood Dale, the aggrieved party here, is located in Du Page County within the Second District. If the Board's representation determination under section 9 is indeed a "final order" as advanced by the city, then administrative review must be undertaken according to section 11(e) of the Act and the Review Law. Resort then to the circuit court of Sangamon County is not permitted under the statute and the facts.

We recognize any further questions in this area have been resolved by a recent legislative amendment to the Act. By the terms of Senate Bill 1215, the General Assembly has added section 9(i) to provide a Board order certifying that a labor organization has been fairly and freely chosen by a majority of employees in an appropriate bargaining unit is a "final order" of the Board. (85th Ill. Gen. Assem., Senate Proceedings, June 19, 1987, at 1215, passed along with Governor's amendatory veto, September 15, 1987 (amending Ill. Rev. Stat. 1985, ch. 48, par. 1609, by adding section 9(i) to the Act).) Any party aggrieved by such a final

order issued under section 9 "on or after the effective date of this amendatory Act" may obtain judicial review in accordance with the Administrative Review Law directly in the appellate court of the district in which the aggrieved party resides or transacts business. This amendment by its terms is inapplicable to the instant cause, however.

■ Regardless of our prior conclusions, the city finally asserts the Board's inclusion of detectives in the bargaining unit may be challenged directly in the circuit court as an unlawful exercise of the Board's delegated authority. The city points to the decision in *Leedom v. Kyne* (1958), 358 U.S. 184, 3 L. Ed. 2d 210, 79 S. Ct. 180, where the United States Supreme Court held a unit-certification action was subject to the direct equity jurisdiction of a Federal district court. The Court explained lower courts were permitted to entertain actions to set aside unit-certification orders where the NLRB had plainly exceeded its statutory authority, and where no other adequate remedy was available. In *Leedom*, a professional employees' union brought suit where the NLRB had certified the union as representative of a unit comprised of both professional and nonprofessional employees without affording the professionals a separate election in violation of an express provision of the LMRA (see 29 U.S.C. §159(b)(1) (1982)).

However, the limited scope of the *Leedom* decision has been underscored by a subsequent Supreme Court opinion. In *Boire v. Greyhound Corp.* (1964), 376 U.S. 473, 11 L. Ed. 2d 849, 84 S. Ct. 894, the Court expressly restricted the *Leedom* "exception" to instances where an error of the NLRB involves a patently incorrect construction of the LMRA. A finding of fact, even if contrary to the weight of the evidence, is not reviewable. The Court stressed the "exception is a narrow one, not to be extended to permit plenary district court review of Board orders in certification proceedings whenever it can be said that an erroneous assessment of the particular facts before the Board has led it to a conclusion which does not comport with the law." (376 U.S. at 481, 11 L. Ed. 2d at 855, 84 S. Ct. at 899.) Exceptions to the rule against direct review of unit certification, the Court continued, would only arise in cases "characterized by extraordinary circumstances." 376 U.S. at 479, 11 L. Ed. 2d at 854, 84 S. Ct. at 898; see also II C. Morris, The Developing Labor Law 1716 (2d ed. 1983).

The Board here designated as appropriate under the Act a unit consisting of "all full-time sworn police officers, assistant watch commanders and detectives below the rank of sergeant." The city contests the Board's findings that the detectives are not confidential employees under section 3(c) of the Act (Ill. Rev. Stat. 1985, ch. 48, par.

1603(c)), and that they are otherwise appropriate for inclusion in a collective-bargaining unit pursuant to section 9(b) (Ill. Rev. Stat. 1985, ch. 48, par. 1609(b)). These are clearly factual determinations of the Board made in relation to the relevant statutory provisions. This is not a case "characterized by extraordinary circumstances" or involving an order of the Board made in excess of its delegated powers and contrary to a specific prohibition in the Act. Findings of fact such as these are not directly reviewable in the circuit court under the exception advocated by the city.

In sum, there exists no set of circumstances presented to us by which jurisdiction to hear this matter would have rested in the circuit court. We therefore affirm the order of the circuit court of Sangamon County dismissing the city's petition, as no set of facts exists under the pleadings which would entitle the plaintiff to recover. (See *Ogle v. Fuiten* (1984), 102 Ill. 2d 356, 466 N.E.2d 224.) Our holding, however, does not mean the city is foreclosed from having the propriety of the representation proceeding administratively reviewed. Those same issues are currently pending before the Second District in an appeal arising out of the completed unfair labor practice charge proceedings in case No. 2—87—0479.

Affirmed.

McCULLOUGH and LUND, JJ., concur.