# Illinois Official Reports

## Appellate Court

---

**Cigna v. Illinois Human Rights Comm'n, 2020 IL App (1st) 190620**

---

| | |
|---|---|
| Appellate Court Caption | PAUL CIGNA and PROFESSIONAL CONSULTANTS, INC., Petitioners, v. THE ILLINOIS HUMAN RIGHTS COMMISSION, THE DEPARTMENT OF HUMAN RIGHTS, and LOIS OWEN, Respondents. |
| District & No. | First District, Fourth Division<br>Nos. 1-19-0620, 1-19-1010 cons. |
| Filed | May 21, 2020 |
| Decision Under Review | Petition for review of orders of Illinois Human Rights Commission, Nos. 2014-CN-1493, 2014-CN-1494. |
| Judgment | Affirmed. |
| Counsel on Appeal | Robert M. Winter, Richard Lee Stavins, and Christine R. Walsh, of Robbins, Salomon & Patt, Ltd., of Chicago, for petitioners.<br><br>Kelli Dudley and Paul Luka, both of Chicago, for respondent Lois Owen.<br><br>Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Carson R. Griffis, Assistant Attorney General, of counsel), for other respondents. |

Panel          PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices Lampkin and Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1        The instant consolidated appeals arise on a petition for review of a decision of the Illinois Human Rights Commission (Commission), which found that petitioner Paul Cigna sexually harassed respondent Lois Owen when Owen was an employee of Cigna's company, Professional Consultants, Inc. (PCI). After a two-day hearing, an administrative law judge (ALJ) recommended that the Commission find that Cigna had sexually harassed Owen and mailed a copy of the recommendation and proposed order to the parties. Cigna and PCI filed objections to the ALJ's recommendation and proposed order. However, the Commission found that the objections were not timely filed and, consequently, adopted the ALJ's recommendation and proposed order. Cigna and PCI then filed a motion to vacate the Commission's decision, claiming that the objections were timely filed, which was denied. They now appeal both the finding that the objections were untimely and the denial of the motion to vacate. For the reasons that follow, we affirm.

¶ 2                                    BACKGROUND

¶ 3      On December 3, 2013, Owen filed two charges with the Department of Human Rights (Department), alleging that Cigna and PCI subjected her to sexual harassment and a hostile work environment based on her sex in violation of section 2-102(D) of the Illinois Human Rights Act (Act) (775 ILCS 5/2-102(D) (West 2012)). The Department entered a finding of substantial evidence on the charges on May 30, 2014, and Owen requested that the Department file complaints on her behalf with the Commission, which it did on August 14, 2014.

¶ 4      Owen alleged that she was employed by PCI[1] from October 15, 2005, through July 3, 2013, and that Cigna was a member of management and was Owen's direct supervisor. Owen further alleged that from the time of her hire until July 2013, Cigna sexually harassed her and created a hostile work environment based on her sex, including calling Owen a "b***" on a daily basis, having a picture of a woman with her breasts exposed hanging in Cigna's office, making sexual comments to Owen, and sending e-mails of photos and videos depicting nude women or women in suggestive poses. Owen alleged that she "refused Cigna's sexual advances and found them unwelcome, unwanted, and offensive." Among other relief, Owen sought damages for emotional distress, as well as attorney fees.

¶ 5      On September 8, 2014, both Cigna and PCI filed answers to the Department's complaints, denying that Cigna made any sexual advances to Owen and denying that any of Cigna's conduct was unwelcome, unwanted, or offensive. Both answers alleged that Owen's conduct in the workplace "demonstrated that [Owen] initiated and welcomed communications of a

---

[1]While Owen's charge alleged that PCI is located in Romeoville, an affidavit later filed by Cigna in support of his motion for summary disposition states that the business office of PCI was located in Lisle during the time of Owen's employment and that Owen worked out of the business office for the entire term of her employment.

sexual nature." The answers also set forth four affirmative defenses: (1) that Owen's conduct "evidenced that she initiated, welcomed and found inoffensive communication of the nature which she now claims in her complaint constituted a sexually hostile environment," (2) that the alleged conduct was not severe and pervasive and therefore did not rise to the level of actionable sexual harassment, (3) that the prayer for relief sought remedies beyond those supported by the facts, and (4) that the complaints alleged violations outside the time period covered by the Act. On October 31, 2014, the Commission entered an agreed order consolidating the two cases.

¶ 6    On November 20, 2014, Cigna and PCI filed a motion for a summary decision, claiming that the documented conduct of Owen, including e-mails authored by Owen and distributed to Cigna and other coworkers, demonstrated that Owen "welcomed, relished and initiated office communication of a sexual nature." The motion argued that the complaints should therefore be dismissed since Commission decisions established that a complainant could not show that conduct of an employer was "unwelcome" in circumstances where the complainant engaged in conduct demonstrating that the complainant welcomed the same sort of conduct of which the complainant complained. Attached to the motion for summary disposition was the affidavit of Cigna, as well as copies of a number of e-mails sent by Owen to Cigna and other PCI employees. On April 16, 2015, an ALJ denied the motion for a summary decision, finding the presence of a genuine issue of material fact concerning the sexual harassment charges.

¶ 7    The matter proceeded to a hearing before the ALJ on February 14 and 15, 2017. In her case-in-chief, Owen called as witnesses (1) Cigna, as an adverse witness; (2) John Parkhurst, a former independent contractor with PCI; (3) Ronald Petty, Owen's fiancé; and (4) Owen. In their case-in-chief, PCI and Cigna called as witnesses (1) Owen, as an adverse witness, and (2) Cigna. On September 11, 2017, the ALJ issued a recommended liability determination, finding that Owen was hired by PCI as a commercial service representative, office manager, and assistant to Cigna, her supervisor, and was employed with PCI from 2005 through July 2, 2013, when she resigned. The ALJ found that both Owen and Cigna engaged in the exchange of "sexually explicit emails, banter, and comments" until December 2011 or January 2012, when Owen communicated her wish that such behavior cease to Cigna. The ALJ found that Owen testified that a number of incidents occurred since the end of 2011 or beginning of 2012, including (1) a painting of a woman with partially exposed breasts was hanging in Cigna's office throughout Owen's employment despite Owen's indicating that the painting was inappropriate, (2) Cigna made several public comments to Owen suggesting sexual activities, (3) Cigna sent several e-mails to Owen containing sexual images or sexual content, (4) Cigna regularly referred to Owen and other women as " 'b***,' " (5) Cigna occasionally told Owen about his infidelities and desires to be with younger women, and (6) Cigna intentionally frightened Owen by sneaking up on her on occasion. The ALJ found that Owen had established by a preponderance of the evidence that she was a victim of sexual harassment and that she had suffered emotional distress from the actions of Cigna and PCI.

¶ 8    The ALJ found that "[t]he parties were straightforward about their mutual involvement in inter-office antics prior to December 2011" and that there was "little to suggest that Cigna stopped his behavior after that date," especially given the e-mails that were admitted into evidence. Accordingly, the ALJ found that Owen's listing of events was "true and credible." The ALJ further found that "[t]his behavior is not only unprofessional in the extreme, but it is charged with harsh sexual innuendo aimed against women, especially this woman," which was

exacerbated by the fact that Cigna was the owner and general manager of the business, meaning that he had authority over Owen. The ALJ found that, "under the totality analysis, the incidents permeated the work environment to a degree that it was sufficiently severe and pervasive as to alter the conditions of employment and create a continuing intimidating, hostile or offensive working environment."

¶ 9 The ALJ also found the "continuing violation" doctrine applicable, permitting consideration of actions taking place more than 180 days prior to the date of the charge. The ALJ found that "Cigna's behavior never stopped. In fact, his conduct became more defiant as [Owen] expressed her rebuke of Cigna's barrage of sexual antics." Finally, the ALJ found that while an award for back wages was not supported, an award of damages for emotional distress was warranted and found that an award of $25,000 was "fair and reasonable under all of the circumstances presented by this case." The ALJ also recommended the award of attorney fees and costs, as provided by the Act.

¶ 10 After Owen's attorneys filed fee petitions, on April 24, 2018, the ALJ issued a recommended order and decision, which recommended a total award of $27,545.78 in attorney fees in addition to the relief recommended in the September 11, 2017, recommended liability determination. A memorandum of service certified that the ALJ's recommended order and decision was served on the attorneys by mailing it on April 24, 2018.

¶ 11 On May 30, 2018, PCI and Cigna filed exceptions to the recommended order and decision, claiming that the ALJ erred in considering allegations of sexual harassment preceding the 180 days prior to the filing of the charge and that the remaining allegations were insufficient to establish sexual harassment under the Act. PCI and Cigna also challenged the ALJ's recommendations concerning the awards for emotional distress and attorney fees. Attached to the exceptions was a copy of the envelope in which the ALJ's recommended order and decision was sent to PCI and Cigna's attorney, which indicates that it was mailed on April 25, 2018.

¶ 12 On February 22, 2019, the Commission entered an order in which it found that PCI and Cigna's objections were filed untimely. The Commission found that, "due to [PCI and Cigna's] untimely filed Exceptions to the Recommended Order and Decision, the Commission lacks jurisdiction to hear and entertain this matter." Accordingly, the Commission's order provided that the Commission declined further review in the matter pursuant to section 8A-103(E)(1) and (3) of the Act (775 ILCS 5/8A-103(E)(1), (3) (West 2018)) and that the ALJ's recommended order and decision "has become the Order of the Commission."

¶ 13 On March 5, 2019, PCI and Cigna filed an emergency motion to vacate the Commission's February 22, 2019, order, claiming that the exceptions were timely filed and, therefore, the Commission had jurisdiction over the matter. On May 2, 2019, the Commission entered an order denying the motion to vacate. PCI and Cigna filed two petitions for review before this court: appeal No. 1-19-0620 challenged the Commission's February 22, 2019, order, while appeal No. 1-19-1010 challenged the Commission's May 2, 2019, order. This court consolidated the two appeals on June 4, 2019.

¶ 14                                    ANALYSIS

¶ 15 On appeal, we are asked to determine whether the Commission properly determined that PCI and Cigna's objections were untimely filed. However, first, we must determine our jurisdiction to consider the instant appeals. "[E]ven where no party raises the question, a reviewing court has a duty to consider *sua sponte* its jurisdiction and dismiss the appeal if it

determines that jurisdiction is lacking." *Peabody Coal Co. v. Industrial Comm'n*, 307 Ill. App. 3d 393, 395 (1999) (citing *A.O. Smith Corp. v. Industrial Comm'n*, 109 Ill. 2d 52, 54 (1985)). In the case at bar, we are asked to review the order of an administrative agency, namely, the Commission's order concerning Owen's sexual harassment claim. "The appellate court's power to review administrative decisions derives not from the Illinois Constitution but from the legislature." *Cook County Sheriff's Enforcement Ass'n v. County of Cook*, 323 Ill. App. 3d 853, 855 (2001). Thus, "[t]he appellate court has jurisdiction to review administrative decisions only as provided by law." *People ex rel. Madigan v. Illinois Commerce Comm'n*, 231 Ill. 2d 370, 387 (2008). "When the appellate court undertakes direct review of an administrative decision, it exercises special statutory jurisdiction. [Citation.] Special statutory jurisdiction is limited to the language of the act conferring it." *People ex rel. Madigan*, 231 Ill. 2d at 387; see also *ESG Watts, Inc. v. Pollution Control Board*, 191 Ill. 2d 26, 30 (2000) ("When a court is exercising special statutory jurisdiction the language of the act conferring jurisdiction delimits the court's power to hear the case. A party seeking to invoke special statutory jurisdiction thus 'must strictly adhere to the prescribed procedures' in the statute." (quoting *McGaughy v. Illinois Human Rights Comm'n*, 165 Ill. 2d 1, 12 (1995))).

¶ 16 In the case at bar, judicial review of the Commission's decision is governed by section 8-111(B) of the Act, which provides, in relevant part:

"(1) Any complainant or respondent may apply for and obtain judicial review of a final order of the Commission entered under this Act by filing a petition for review in the Appellate Court within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected by the decision. ***
***

(3) Venue. Proceedings for judicial review shall be commenced in the appellate court for the district wherein the civil rights violation which is the subject of the Commission's order was allegedly committed." 775 ILCS 5/8-111(B) (West 2018).

Section 8-111(D) further specifies that "[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 ILCS 5/8-111(D) (West 2018).

¶ 17 There is no dispute that PCI and Cigna complied with the 35-day requirement for filing their petitions for review of the Commission's decision. However, the district in which they filed their petitions for review was not the "appellate court for the district wherein the civil rights violation which is the subject of the Commission's order was allegedly committed." 775 ILCS 5/8-111(B)(3) (West 2018). The record is clear, and the parties do not dispute, that all of the alleged violations of the Act occurred at PCI's office in Lisle. We take judicial notice that Lisle is located in Du Page County, within the Second District. See *City of Wood Dale v. Illinois State Labor Relations Board*, 166 Ill. App. 3d 881, 894 (1988) (taking notice of the fact that the city of Wood Dale was located in Du Page, within the Second District); see also *Susman v. North Star Trust Co.*, 2015 IL App (1st) 142789, ¶ 31 (taking judicial notice of the fact that Lake County was adjacent to Cook County); *Town of Bloomington v. Murphy*, 73 Ill. App. 2d 417, 419 (1966) ("the geography of a political subdivision is a matter that may be judicially noted"). Thus, the petitions for review should have been filed in the Second District, not in the First District. Accordingly, we must consider whether filing the petitions for review in the improper district has an effect on our ability to consider the merits of the petitions.

¶ 18    As noted, "[w]hen the appellate court undertakes direct review of an administrative decision, it exercises special statutory jurisdiction. [Citation.] Special statutory jurisdiction is limited to the language of the act conferring it." *People ex rel. Madigan*, 231 Ill. 2d at 387. Thus, if the language of section 8-111(B) of the Act limits the jurisdiction of the appellate court, we are bound by such limitations. Indeed, there are situations in which the appellate court's statutory authority to review appeals is limited to particular districts of the appellate court. See, *e.g.*, *People ex rel. Madigan*, 231 Ill. 2d at 387 (finding the Public Utilities Act "limits the appellate court's special statutory jurisdiction to districts that encompass the matter under review by the [Illinois Commerce] Commission"). In the case at bar, after examining the language of the Act, we cannot find that the venue provision of section 8-111(B) affects the jurisdiction of this court to consider the petitions for review at issue.

¶ 19    As noted, section 8-111(B) contains three separate subparagraphs, two of which are relevant to our analysis.[2] Section 8-111(B)(1) provides that "[a]ny complainant or respondent may apply for and obtain judicial review of a final order of the Commission entered under this Act by filing a petition for review in the Appellate Court" (775 ILCS 5/8-111(B)(1) (West 2018)) while section 8-111(B)(3) specifically addresses "[v]enue" (775 ILCS 5/8-111(B)(3) (West 2018)). The requirement that the petition for review be filed in a particular appellate district appears only in subparagraph (3), not subparagraph (1). This is distinct from a statute such as the Public Utilities Act considered in *People ex rel. Madigan*, 231 Ill. 2d at 387, which provides that a party "may appeal to the appellate court of the judicial district in which the subject matter of the hearing is situated." 220 ILCS 5/10-201(a) (West 2018); see also 5 ILCS 315/11(e) (West 2018) (judicial review of unfair labor practice decisions under Illinois Public Labor Relations Act are governed by the Administrative Review Law "except that such judicial review shall be afforded directly in the appellate court for the district in which the aggrieved party resides or transacts business"). This suggests that the specification as to the appellate district is intended to apply to a venue analysis and is not intended to limit jurisdiction to a particular appellate court district.

¶ 20    In interpreting the Administrative Review Law, our supreme court has held that filing an action for administrative review in an improper venue does not deprive the circuit court of subject matter jurisdiction.[3] *Slepicka v. Illinois Department of Public Health*, 2014 IL 116927, ¶ 36. In doing so, the supreme court noted the well-settled distinction between jurisdiction and venue: " 'Jurisdiction and venue are distinct legal concepts. Jurisdiction relates to the power of a court to decide the merits of a case, while venue determines where the case is to be heard. Statutory venue requirements are procedural only and do not have any relation to the question of jurisdiction.' " *Slepicka*, 2014 IL 116927, ¶ 41 (quoting *Baltimore & Ohio R.R. Co. v.*

---

[2] Section 8-111(B)(2) provides that "[i]n any proceeding brought for judicial review, the Commission's findings of fact shall be sustained unless the court determines that such findings are contrary to the manifest weight of the evidence." 775 ILCS 5/8-111(B)(2) (West 2018).

[3] We note that the Act has not expressly adopted the Administrative Review Law, so it does not govern our analysis in the instant appeals. See 735 ILCS 5/3-102 (West 2018) (the Administrative Review Law "shall apply to and govern every action to review judicially a final decision of any administrative agency where the Act creating or conferring power on such agency, by express reference, adopts the provisions of" the Administrative Review Law or its predecessor); see also *Cook County Sheriff's Office v. Cook County Comm'n on Human Rights*, 2016 IL App (1st) 150718, ¶ 27 (noting that the Act has not expressly adopted the Administrative Review Law).

*Mosele*, 67 Ill. 2d 321, 328 (1977)). The supreme court further noted that the statute at issue "incorporates this long-standing distinction by treating the two concepts separately," first dealing solely with jurisdiction and then later discussing venue. *Slepicka*, 2014 IL 116927, ¶ 42.

¶ 21    Similarly, in the case at bar, section 8-111(B) discusses venue separately, suggesting that it is intended to be distinct from the jurisdictional analysis. See *Slepicka*, 2014 IL 116927, ¶ 41 ("It must be presumed that the legislature was aware of this generally accepted principle [distinguishing between venue and jurisdiction] when the Administrative Review Law was enacted in 1945."). Indeed, the fact that paragraph 8-111(B) is expressly titled "[v]enue" is a strong indication that the legislature intended the particular appellate district to be considered only as part of a venue analysis, not as a limitation on appellate jurisdiction.

¶ 22    Thus, we find that we have jurisdiction over the instant petitions for review under section 8-111(B), even though the proper venue for such review is the Second District. Here, however, no party in the instant case has sought to transfer the appeals to the Second District based on improper venue. Generally, objections to venue in judicial proceedings are forfeited in the absence of a timely motion to transfer venue, and at least one court has found this principle to apply in administrative proceedings. *Pet Rescue, Inc. v. Doherty*, 302 Ill. App. 3d 274, 279-80 (1999); see also *La Grange Bank No. 1713 v. Du Page County Board of Review*, 79 Ill. App. 3d 474, 477-78 (1979) (considering issue of whether State Property Tax Appeal Board had waived any objection to venue in administrative review action). Accordingly, any challenge to this court's review of the petitions for review based on improper venue has been forfeited, so we proceed to consider the merits of PCI and Cigna's claims.[4]

¶ 23    In the case at bar, the Commission adopted the ALJ's recommended order and decision after finding that PCI and Cigna's objections were not timely filed, a decision that PCI and Cigna claim was erroneous. The parties' arguments rely on the interpretation of the Act and its accompanying regulations concerning the time for filing objections. The interpretation of statutes and regulations is a question of law, which we review *de novo*. *Hartney Fuel Oil Co. v. Hamer*, 2013 IL 115130, ¶ 16. *De novo* consideration means we perform the same analysis that a trial judge would perform. *XL Specialty Insurance Co. v. Performance Aircraft Leasing, Inc.*, 2019 IL App (1st) 181031, ¶ 62. However, "even where review is *de novo*, an agency's interpretation of its regulations and enabling statute are 'entitled to substantial weight and deference,' given that 'agencies make informed judgments on the issues based upon their experience and expertise and serve as an informed source for ascertaining the legislature's intent.' " *Hartney Fuel Oil Co.*, 2013 IL 115130, ¶ 16 (quoting *Provena Covenant Medical Center v. Department of Revenue*, 236 Ill. 2d 368, 387 n.9 (2010)).

_____

[4]We note that, on appeal, the State respondents claim that we also lack jurisdiction because, by failing to timely file exceptions, PCI and Cigna failed to exhaust their administrative remedies. See 56 Ill. Adm. Code 5300.910 (1996) ("A Party who fails to file exceptions shall be deemed to have failed to exhaust administrative remedies."); *Robinson v. Village of Oak Park*, 2013 IL App (1st) 121220, ¶ 7 ("The exhaustion of administrative remedies doctrine has long been a fundamental principle of administrative law and an aggrieved party ordinarily cannot seek review in the courts without first pursuing all administrative remedies." (citing *Illinois Bell Telephone Co. v. Allphin*, 60 Ill. 2d 350, 357-58 (1975))). However, this argument rests on the assumption that the exceptions were not timely filed, the precise issue before us on appeal. Accordingly, addressing the State respondents' jurisdictional argument requires us to resolve the issues raised by PCI and Cigna on appeal.

- 7 -

¶ 24    Here, the statute at issue is section 8A-103(A) of the Act, which provides:

"Within 30 days of the receipt of service of the hearing officer's recommended order, a party may file with the Commission any written exceptions to any part of the order. Exceptions shall be supported by argument and served on all parties at the time they are filed. If no exceptions are filed, the recommended order shall become the order of the Commission without further review. The Commission shall issue a notice that no exceptions have been filed no later than 30 days after the exceptions were due." 775 ILCS 5/8A-103(A) (West 2018).

The question we are asked to resolve is whether PCI and Cigna's objections were filed "[w]ithin 30 days of the receipt of service of the hearing officer's recommended order," as required by the Act. 775 ILCS 5/8A-103(A) (West 2018).

¶ 25    Our analysis is guided by examination of the Commission's rules and regulations concerning service. Administrative rules and regulations have the force and effect of law and must be construed under the same standards that govern the construction of statutes. *People ex rel. Madigan*, 231 Ill. 2d at 380. In interpreting an agency regulation, "our primary objective is to ascertain and give effect to the intent of the agency." *People ex rel. Madigan*, 231 Ill. 2d at 380. Our supreme court has noted that "[t]he surest and most reliable indicator of intent is the language of the regulation itself." *People ex rel. Madigan*, 231 Ill. 2d at 380. Thus, where the language of the regulation is clear and unambiguous, we must apply it as written, without resort to extrinsic aids of statutory construction. *People ex rel. Madigan*, 231 Ill. 2d at 380. "In determining the plain meaning [of the regulation], we consider the regulation in its entirety, keeping in mind the subject it addresses and the apparent intent of the [agency] in enacting it." *People ex rel. Madigan*, 231 Ill. 2d at 380.

¶ 26    Under the Commission's procedural rules, all orders required to be served are to be served either personally or by first-class mail. 56 Ill. Adm. Code 5300.30(a) (1992). In the case at bar, the ALJ's recommended order and decision was served on the parties via mail. The Commission's rules further set forth procedures for determining the date of service by mail:

"Effective Date of Service by Mail. Service by mail shall be deemed complete four days after mailing of the document, properly addressed and posted for delivery, to the Person to be served." 56 Ill. Adm. Code 5300.30(c) (1992).

Here, the memorandum of service certified that the ALJ's recommended order and decision was served on the attorneys by mailing it on April 24, 2018, but an envelope submitted by PCI and Cigna shows that it was actually mailed on April 25, 2018. If the April 24 date is used, four days following April 24 is April 28, and 30 days after April 28 is May 28.[5] If the April 25 date is used, four days following April 25 is April 29, and 30 days after April 29 is May 29. PCI and Cigna filed their objections on May 30, 2018, more than 30 days after either April 28 or April 29, 2018. Accordingly, the Commission found that the exceptions were not timely filed and that it therefore lacked jurisdiction to consider them.

¶ 27    However, PCI and Cigna contend that the Commission erred in determining the date that their exceptions were due, because both April 28 and April 29, 2018, were weekend days.[6]

---

[5]We take judicial notice that Monday, May 28, 2018, was Memorial Day, a holiday.

[6]We take judicial notice that April 28, 2018, was a Saturday and that April 29, 2018, was a Sunday.

Thus, they argue that the effective date of service should have been May 1, 2018, the following Monday, making their May 30 filing timely.

¶ 28    This argument relies on the Commission's regulation concerning computation of time, which provides:

> "For purposes of computing any period of time provided for under the Act or this Part, the date of any act, event, service or default from which such period begins to run shall not be included. If the last day of any such period of time shall fall on a Saturday, Sunday or legal State holiday, such time period shall continue to run until the end of the next day which is not a Saturday, Sunday or legal State holiday. When the period of time prescribed or allowed is less than seven days, intermediate Saturdays, Sundays and legal State holidays shall be excluded from the computation. Whenever a time period commences upon a Person's receipt of service or notice, and service is by mail, receipt shall be deemed to occur on the fourth day after mailing." 56 Ill. Adm. Code 5300.20 (1992).

PCI and Cigna argue that the mailing of service is a "period of time" under this rule and, accordingly, the date on which service was effective was Monday, May 1, 2018. We do not find this argument persuasive.

¶ 29    The date of receipt of service is the trigger for the commencement of a "period of time" under the regulation. It is not a "period of time" in itself—nobody is required to *do* anything within the four-day period in which the mailing occurs. This is made clear by the language of the regulation itself. First, the regulation provides that "the date of any act, event, service or default *from which such period of time begins to run*" shall not be included in the computation of the period of time. (Emphasis added.) 56 Ill. Adm. Code 5300.20 (1992). "[S]ervice" is listed as one of several things that can trigger the commencement of a "period of time"; it is not included as a "period of time" itself, as PCI and Cigna claim. Additionally, the last sentence of the regulation specifies that "[w]henever *a time period commences upon* a Person's receipt of service or notice," receipt is deemed to occur four days after mailing. (Emphasis added.) 56 Ill. Adm. Code 5300.20 (1992). Again, this sentence makes clear that receipt of service is the starting point, not an ending point, to a time period. See *People v. Saunders*, 261 Ill. App. 3d 700, 705 (1994) (noting that Illinois Supreme Court Rule 12(c) (eff. Nov. 15, 1992), which similarly provides that service by mail is complete four days after mailing, "was added to establish, when service is made by mail, a definite starting point for measuring the time periods that begin to run on the date of service").

¶ 30    Moreover, if service was included as a "period of time" for purposes of the regulation, and therefore subject to the same rules of computation, there would be no need for a separate sentence in the regulation expressly providing that receipt "shall be deemed to occur on the fourth day after mailing" (56 Ill. Adm. Code 5300.20 (1992)), especially since the four-day rule is already set forth in section 5300.30 (56 Ill. Adm. Code 5300.30 (1992)). "The word 'deemed' is absolute ***." *Gemini Services, Inc. v. Martin*, 141 Ill. App. 3d 17, 19 (1986). We note that, prior to 1992, the regulation read that receipt "shall be presumed to occur on the fourth day after mailing." 5 Ill. Reg. 2712, 2716 (eff. Mar. 2, 1981). The change from "presum[ing]" receipt of service to "deem[ing]" receipt to occur on the fourth day after mailing is not insignificant, especially as the change strengthened the language the Commission chose to use. See *Gemini*, 141 Ill. App. 3d at 20 (noting that the use of the word " 'presumed' " in the regulation "might be taken to indicate a rebuttable determination which could be negated

by proof of actual receipt"). We are also mindful that the same language appears twice in the regulations, in successive sections, both of which "deem" service complete on the fourth day after mailing, suggesting that the Commission used this language intentionally to fix the date of service firmly.

¶ 31  PCI and Cigna do not point to any cases in which the Commission's regulations have been interpreted in the way they seek. The most they provide is a Commission decision that they cite for the first time in their reply brief, *Ginn*, Ill. Hum. Rts. Comm'n Rep. 2002CF0882 (Nov. 17, 2005). It is well settled that a party may not raise new arguments in its reply brief. Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018); *Finko v. City of Chicago Department of Administrative Hearings*, 2016 IL App (1st) 152888, ¶ 23 (declining to consider case cited for first time in reply brief). However, even if they had properly cited the decision in their initial brief, the State respondents also cite a Commission decision reaching the opposite conclusion, *Lalvani*, Ill. Hum. Rts. Comm'n Rep. 1990CA2502 (June 27, 1997). As noted, "an agency's interpretation of its regulations and enabling statute are 'entitled to substantial weight and deference,' given that 'agencies make informed judgments on the issues based upon their experience and expertise and serve as an informed source for ascertaining the legislature's intent.' " *Hartney Fuel Oil Co.*, 2013 IL 115130, ¶ 16 (quoting *Provena Covenant Medical Center*, 236 Ill. 2d at 387 n.9). Here, the Commission does not appear to have a clear "interpretation," and we therefore do not find either of these decisions particularly helpful.[7]

¶ 32  Indeed, none of the parties cite any cases or agency decisions in which the timeliness of a filing depended on whether service was considered to be complete on a weekday or on a weekend. The State respondents have cited a number of cases in which courts have made comments concerning the effective date of service—cases in which a weekend date has been considered to be the effective date of service (see, *e.g.*, *City of St. Charles v. Illinois Labor Relations Board*, 395 Ill. App. 3d 507, 511 (2009)), as well as cases in which effective service was construed to be the following Monday (see, *e.g.*, *Board of Education of Plainfield Community Consolidated School District No. 202 v. Illinois Educational Labor Relations Board*, 143 Ill. App. 3d 898, 904 (1986)). PCI and Cigna have also cited a decision from the Pollution Control Board in which weekend service was deemed complete on the following Monday. *Quisenberry*, Ill. Pollution Control Bd. Op. 11-11, at *3 (Dec. 2, 2010). However, none of these cases or decisions turns on the question we are asked to resolve and so are of limited usefulness. We also find unpersuasive PCI and Cigna's claim that section 5300.20 "parallels" the Statute on Statutes. Section 1.11 of the Statute on Statutes contains no reference to service whatsoever, whether by mail or otherwise, and provides no insight on the question before us. See 5 ILCS 70/1.11 (West 2018).

¶ 33  The only case cited by the parties that we find instructive is *Gemini*, in which the Fourth District was asked to determine if the actual date of service controlled over the effective date of service set forth in the Commission's rules. In that case, the Commission entered an order

---

[7]We also note that neither decision turned on the date of receipt of service; in both cases, the document that was filed after receipt of service was timely and would have been timely regardless of whether service was deemed complete on a weekend or a weekday. See *Ginn*, Ill. Hum. Rts. Comm'n Rep. 2002CF0882, at *6-7 (fourth day after mailing was Sunday, July 10, 2005, so "effective date" of service was Monday, July 11, 2005, and petition for attorney fees was timely filed on July 28, 2005, within 21 days); *Lalvani*, Ill. Hum. Rts. Comm'n Rep. 1990CA2502, at *1 (date of service was Saturday, May 24, 1997, and exceptions were timely filed on June 19, 1997, within 30 days).

against the plaintiff on November 13, 1984, which was mailed the same day. *Gemini*, 141 Ill. App. 3d at 18. The plaintiff received the order in the mail on November 15, 1984, and filed a complaint in the circuit court on December 24, 1984.[8] *Gemini*, 141 Ill. App. 3d at 18. The circuit court found the complaint to be untimely filed, calculating the 35-day filing period as beginning at the time that the plaintiff received actual notice of the Commission's order. *Gemini*, 141 Ill. App. 3d at 18. On appeal, the Fourth District reversed, finding that the 35-day period did not begin until four days after the date of mailing, making the filing timely.[9] *Gemini*, 141 Ill. App. 3d at 18.

¶ 34    The *Gemini* court considered the language of section 1.3 of the Commission's procedural rules, now codified as section 5300.30. Specifically, the *Gemini* court noted that section 1.3(c) provided that " '[s]ervice by mail shall be *deemed* complete four days after mailing.' " (Emphasis in original.) *Gemini*, 141 Ill. App. 3d at 19 (quoting 56 Ill. Adm. Code 5300.30, amended at 5 Ill. Reg. 2716 (eff. Mar. 2, 1981)). The court found that "[t]he word 'deemed' is absolute and, if applicable, would indicate that despite [the plaintiff's] actual receipt of the order on November 15, the service was not complete until November 17, which was four days after the mailing on November 13." *Gemini*, 141 Ill. App. 3d at 19. While the court noted that there were "uncertainties and ambiguities," given the fact that section 1.3 was titled " 'Pleadings,' " it found that the section applied to service of the Commission's orders and further found that any ambiguities should be resolved in the plaintiff's favor. *Gemini*, 141 Ill. App. 3d at 20. In reaching its decision, the *Gemini* court also contrasted the language of section 1.3 with the language of section 1.2, which is now section 5300.20:

> "We reject the contention that service of the order of the Commission was complete and the 35-day period commenced on November 15, 1984, when plaintiff's attorney actually received the order. Section 1.3(c) is couched in the mandatory language that service 'shall be deemed complete four days after mailing.' This is in contrast to the language of section 1.2 of the Commission's rules [citation], which speaks of computation of time to begin upon receipt of documents which are 'presumed' to have been received four days after mailing. There the word 'presumed' might be taken to indicate a rebuttable determination which could be negated by proof of actual receipt. None of the parties contend that section 1.2 is applicable here." *Gemini*, 141 Ill. App. 3d at 20.

¶ 35    In the case at bar, we find *Gemini* instructive to the extent that it focused on the Commission's choice of the word "deemed" as indicating a mandatory, definite date, regardless of whether the order was actually received on that date. As noted, section 5300.20 now uses the same term in providing that "receipt shall be deemed to occur on the fourth day after mailing." 56 Ill. Adm. Code 5300.20 (1992). Consequently, the *Gemini* court's analysis comports with our own reading of the term as providing a definite date, regardless of the day of the week on which the date happens to fall.

¶ 36    In the case at bar, therefore, PCI and Cigna's objections were filed more than 30 days after the receipt of service of the ALJ's recommended order, as required by the Act. See 775 ILCS

---

[8]At the time, judicial review under the Act was governed by the Administrative Review Law, which required filing in the circuit court within 35 days of service. *Gemini*, 141 Ill. App. 3d at 18.

[9]The *Gemini* court noted that 35 days after the November 13, 1984, filing was Saturday, December 22, making the Monday, December 24, filing timely. *Gemini*, 141 Ill. App. 3d at 18.

5/8A-103(A) (West 2018). Accordingly, the Commission was required to adopt the ALJ's recommended order without further review. 775 ILCS 5/8A-103(A) (West 2018). We can therefore find no error in the Commission's decision declining further review or in denying PCI and Cigna's motion to vacate.

¶ 37                                        CONCLUSION

¶ 38         For the reasons set forth above, the Commission's orders are affirmed. PCI and Cigna filed their objections more than 30 days after the receipt of service of the ALJ's recommended order, making them untimely. Consequently, the Commission was required to adopt the ALJ's recommended order as the order of the Commission, which it did.

¶ 39         Affirmed.