2022 IL App (1st) 210174

No. 1-21-0174

Second Division
December 20, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| COOK COUNTY SHERIFF DEPARTMENT OF CORRECTIONS, | ) ) ) | Petition for Direct Administrative Review of an Order of the Illinois Human |
| Petitioner, | ) ) | Rights Commission. |
| | ) | |
| v. | ) | |
| | ) | Charge No. 2006CF0883 |
| ILLINOIS HUMAN RIGHTS COMMISSION and KANDRA JONES, | ) ) | ALS No. 09-0223. |
| | ) | |
| Respondents. | ) | |

_____

JUSTICE COBBS delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith concurred in the judgment and opinion.
Justice Ellis dissented, with opinion.

**OPINION**

¶ 1     The instant appeal arises on a petition for direct review of a final decision of respondent-appellee, the Illinois Human Rights Commission (Commission), which found that petitioner-appellant, Cook County Sheriff Department of Corrections (Cook County), failed to provide a reasonable accommodation for the disability of respondent-appellee, Kandra Jones, in violation of the Illinois Human Rights Act (Act) (775 ILCS 5/1-101 *et seq.* (West 2020)). Jones alleged that her employer, Cook County, discriminated against her and failed to provide a reasonable

accommodation for her asthma. The Illinois Department of Human Rights (Department) investigated and filed a complaint with the Commission on Jones's behalf. The Commission found in Jones's favor and awarded Jones $50,000 in damages and approximately $31,000 in attorney fees. For the reasons that follow, we dismiss this appeal.

¶ 2                                    I. BACKGROUND

¶ 3     Because we ultimately dismiss this appeal before reaching the merits of the case, we provide only a brief summary of the facts and procedural history.

¶ 4     In 1997, Cook County hired Jones as a correctional officer. It is undisputed that Jones is disabled within the meaning of the Act because she suffers from asthma and sinusitis. In the years leading up to the 2005 incident, there were multiple documented incidents where Jones suffered asthma attacks due to her workplace assignments.

¶ 5     In 2005, Jones was assigned to work at Cook County's Division Three facility, in which there was mold, mildew, dust mites, rats, and cockroaches. While working there, Jones suffered a severe asthma attack, which required medical attention. Upon returning to work, she was temporarily assigned to Cermak Hospital. Jones had no difficulties at that location.

¶ 6     During the month of August, Jones and Cook County's director of personnel, Rosemarie Nolan, engaged in an "interactive process" in order to accommodate Jones's asthma. Jones repeatedly provided documentation from various medical doctors to support her request for a disability related accommodation and to allow her to return to work. Nolan rejected the documentation once because it did not state whether the disability was permanent and several other times because the documentation stated that Jones "is to avoid working in a building which caused allergic reaction. Employee can work at Cermak Hospital. Re-eval in 6 mos." Nolan informed Jones multiple times that the language regarding Cermak Hospital would need to be removed

before Jones could be provided a reasonable accommodation and return to work. Jones alleged that the medical personnel refused to remove the language and she informed Nolan of this.

¶ 7    Nonetheless, on October 3, 2005, Jones was informed by letter that she had been placed on "no-pay status," effective August 8, 2005. On October 6, 2005, Jones sent a letter to Nolan, requesting that she be approved to return to work. On October 24, 2005, Jones received another letter stating that she remained on no-pay status and she should report to the Cook County medical unit. Letters were again exchanged in a meeting between Nolan and Jones the following day. These letters were substantially similar to the previous ones, *i.e.*, Jones asserting that she should be permitted to work and that she had submitted the necessary medical documentation and Nolan asserting that Jones needed to provide a return to work form without the restriction identifying a specific facility. Nolan had also informed Jones on various occasions that if she could not comply with the requested revision, then she should apply for other approved leave status, such as ordinary disability or the Family and Medical Leave Act of 1993 (29 U.S.C. § 2601 (2000)).

¶ 8    Jones was never approved to return to work because she did not provide the requested revised medical documentation. On August 14, 2006, Jones was discharged by the Cook County Sheriff's Merit Board (Merit Board), retroactive to January 6, 2006, due to absenteeism. The Board's decision was affirmed by the circuit court and by this court (*Jones v. Cook County Sheriff's Merit Board*, No. 1-07-3547 (2008)).

¶ 9    Prior to her discharge from employment, on October 19, 2005, Jones filed a disability discrimination charge against Cook County with the Department. In the charge, she alleged that Cook County failed to accommodate her disability when Nolan denied her request for an accommodation for her asthma in August 2005. She also claimed that she was forced to transfer to Division 3 and that she was improperly placed on no-pay status. Jones later amended her charge

to include discrimination claims based on Cook County's failure to reinstate her to active status and her subsequent discharge. Based on this charge, the Department began an investigation.

¶ 10    On March 25, 2009, the Department issued its investigation report, notice of substantial evidence, and notice of dismissal. The Department found that there was substantial evidence to support Jones's claims that Cook County failed to accommodate her disability, improperly transferred her to Division Three, and improperly placed her on no-pay status because of her disabilities in violation of section 2-102(A) of the Act (775 ILCS 5/2-102(A) (West 2020)). The Department dismissed her other claims for lack of evidence.

¶ 11    On May 4, 2009, the Department filed a three-count complaint with the Commission on Jones's behalf. Count I alleged that Cook County denied Jones a reasonable accommodation for her asthma and sinusitis in violation of the Act. Count II specifically alleged that Cook County's August 2005 transfer of Jones from Division Eight to Division Three, where she had a severe allergic reaction, under the guise that Cook County had exclusive control over work assignments was pretext for unlawful discrimination, and Cook County failed to give a legitimate reason for the transfer. Count III alleged that Cook County placed Jones on no-pay status because of her disability in violation of the Act.

¶ 12    Leading up to the administrative hearing, the parties litigated whether the prior litigation related to the Merit Board's decision to terminate Jones's employment could be admitted as evidence. Ultimately, the administrative law judge (ALJ) barred the use of the exhibits related to that litigation, finding that they were not relevant to the issues in this case regarding the failure to accommodate allegations.

¶ 13    A hearing was held on March 20 and 21, 2019, at which Jones and Nolan testified. The parties later submitted post-hearing briefs.

¶ 14    On March 9, 2020, the ALJ issued a recommended liability determination (RLD). As to count I, the ALJ determined that Cook County "failed to provide a reasonable accommodation by creating an incongruous precondition and by failing to have meaningful and effective interaction with Jones." On the other two counts of Jones's complaint, the ALJ found that there was not a preponderance of the evidence that Cook County discriminated against her because of her disability when she was assigned to Division Three or when she was placed on no-pay status.

¶ 15    The ALJ concluded that Jones was entitled to damages for emotional distress in the amount of $50,000. Backpay was not awarded because Jones's discharge was not related to Cook County's failure to accommodate. Finally, the ALJ found that Jones should be awarded attorney fees and directed Jones's counsel to submit a petition for fees.

¶ 16    On July 22, 2020, the ALJ issued its recommended order and decision (ROD). The ROD incorporated the entirety of the RLD and, additionally, determined that $30,679.98 was to be awarded in attorney fees. Attached to the ROD was a memorandum of service, which stated that the ROD was served on Cook County via first class mail on July 23, 2020.

¶ 17    Cook County filed its written exceptions to the ROD on August 28, 2020. In particular, Cook County disputed several findings of fact, arguing they were against the manifest weight of the evidence. Cook County also asserted that Jones's attorney's hourly rate was not reasonable and requested that the fee award be reduced. Finally, Cook County argued that the Commission should overturn several conclusions of law, including, *inter alia*, that Jones's request was a reasonable accommodation, that she fulfilled her duty to cooperate, that she proved by a preponderance of the evidence that she suffered emotional distress consistent with an award of $50,000, that she was entitled to an award of attorney fees, and that documents from Jones's discharge case were properly barred from the administrative hearing in this case.

¶ 18     Jones filed a response, arguing that the exceptions were untimely filed and should be denied or considered waived. The Commission agreed with Jones, finding that both parties had until August 26, 2020, to file exceptions to the ROD and declining to accept Cook County's exceptions. The Commission then issued its final administrative decision adopting the ROD.

¶ 19     Cook County petitioned for a rehearing before the Commission, requesting that the Commission deem its exceptions timely filed and the Commission overturn the findings in the ROD. This petition for rehearing was denied. Cook County also moved to stay enforcement of the decision, which was granted. Cook County then timely petitioned for direct administrative review in this court.

¶ 20                                    II. ANALYSIS

¶ 21     Preliminarily, we note that the Commission has filed a motion to dismiss this appeal for lack of jurisdiction. Cook County responded and we took the motion with the case. In its motion and its brief on appeal, the Commission asserts that this court does not have jurisdiction over this appeal because Cook County failed to exhaust all administrative remedies before seeking review in this court. In particular, the Commission argues that Cook County did not timely file its exceptions to the ROD as is required under the Act. *Id.* § 8A-103(A). In response, Cook County argues that its exceptions were timely filed and, even if they were not, "exhaustion is not a bar to judicial determination when the issue is one of a statutory and case law interpretation." Resolution of the jurisdictional issue requires us to determine whether Cook County's exceptions were timely filed, the precise issue on appeal. See *Cigna v. Illinois Human Rights Comm'n*, 2020 IL App (1st) 190620 ¶ 22, n.4. We begin our analysis with a review of the principles regarding the exhaustion of administrative remedies doctrine.

¶ 22                          A. Exhaustion of Administrative Remedies

¶ 23 Under the doctrine of exhaustion of administrative remedies, "a party aggrieved by an administrative decision ordinarily cannot seek judicial review without first pursuing all available administrative remedies." *County of Knox ex rel. Masterson v. Highlands, L.L.C.*, 188 Ill. 2d 546, 551 (1999). The requirement that a party must exhaust all administrative remedies allows the agency the opportunity to correct its own mistakes and promotes efficiency because claims can generally be resolved more quickly and economically through agency proceedings. *Goral v. Dart*, 2020 IL 125085, ¶ 38. Further, this requirement allows the agency to fully develop and consider the facts of the cause before it, allows the agency to utilize its expertise, and allows the aggrieved party the opportunity to succeed before the agency, rendering judicial review unnecessary. *Id.* ¶ 39. Accordingly, before equitable relief can be sought in this court, administrative remedies must be exhausted. *Id.* ¶ 40.

¶ 24 As pertinent to the issue before us, the Act provides the following procedures and remedies for redressing acts of employment discrimination. Following an administrative hearing, if the ALJ determines that the preponderance of the evidence supports portions of the complaint and awards the complainant attorney fees, the ALJ shall issue a RDL and direct the complainant to file a petition for an award of attorney fees. 56 Ill. Adm. Code 5300.760 (1996). After receiving materials in connection with the award of attorney fees, the ALJ shall prepare a recommended decision, which shall incorporate the RDL and shall include recommendations as to the amount of reasonable attorney's fees. *Id.* This recommended decision shall constitute the ROD. *Id.* A copy of the ROD shall be served upon all parties. *Id.*

¶ 25 A party then has 30 days from receipt of service of the ROD to file with the Commission any written exceptions to any part of the order. 775 ILCS 5/8A-103(A) (West 2020). If no exceptions are filed, the ROD will become the final order of the Commission without further

review. *Id.* In that situation, the Commission must issue a notice, within 30 days after exceptions were due, that no exceptions have been filed. *Id.* "A [p]arty who fails to file exceptions shall be deemed to have failed to exhaust administrative remedies." 56 Ill. Adm. Code 5300.910 (1996). As such, the administrative code is clear that the failure to file timely exceptions precludes review in this court.

¶ 26 Whether the exceptions were timely filed requires an interpretation of the Commission's administrative rules. Administrative rules and regulations have the force and effect of law and are construed under the same principles that apply when construing statutes. *Cigna* , 2020 IL App (1st) 190620, ¶ 25. Courts should first consider the language of the provision at issue. Where the language is clear and unambiguous, it should be given effect without utilizing other aids for construction. *LaBelle v. State Employees Retirement System of Illinois*, 265 Ill. App. 3d 733, 736 (1994). "Words should be given their plain and obvious meaning unless the legislative act changes that meaning." *Hartney Fuel Oil Co. v. Hamer*, 2013 IL 115130, ¶ 25. No part of the provision should be rendered superfluous, and provisions should be read in concert with one another. *Id.* Further, and as relevant here, "[w]here a statute is enacted after a judicial opinion is published, we presume the legislature acted with knowledge of the case law." *Id.*; see *Cigna*, 2020 IL App (1st) 190620, ¶ 30 (recognizing the agency's modification to a regulation following this court's interpretation of the regulation). Finally, in weighing legislative intent, courts should consider "the object to be attained, or the evil to be remedied by the act." *Svithiod Singing Club v. McKibbin*, 381 Ill. 194, 198 (1942).

¶ 27 "The interpretation of statutes and regulations is a question of law, which we review *de novo*." *Cigna*, 2020 IL App (1st) 190620, ¶ 23. Although *de novo* review means we perform the same analysis that a trial judge would perform, an agency's interpretation of its own rules and

regulations are entitled to substantial deference, where the agency is presumably making informed decisions based upon its expertise and experience. *Id.*

¶ 28    As we previously noted, the Act provides that exceptions must be filed within 30 days of receipt of service of the ROD. 775 ILCS 5/8A-103(A) (West 2020). The Commission's procedural rules are set forth in the Administrative Code and govern service and mailing of notices. Pursuant to the Code, all orders must be served either personally or by first-class mail. 56 Ill. Adm. Code 5300.30, amended at 16 Ill. Reg. 7838 (eff. June 1, 1992).[1] Where service is required, as with the ROD, "proof of service" must be filed, which shall include the manner and date of service. *Id.* "Service by mail shall be deemed complete four days after mailing of the document, properly addressed and posted for delivery, to the Person to be served." *Id.* Additionally, the rules provide for the computation of time:

> "[T]he date of any act, event, service or default from which such period of time begins to run shall not be included. If the last day of any such period of time shall fall on a Saturday, Sunday or legal State holiday, such time period shall continue to run until the end of the next day which is not a Saturday, Sunday or legal State holiday. When the period of time prescribed or allowed is less than seven days, intermediate Saturdays, Sundays and legal State holidays shall be excluded from the computation. Whenever a time period commences upon a Person's receipt of service or notice, and service is by mail, receipt shall be deemed to occur on the fourth day after mailing." 56 Ill. Adm. Code 5300.20 (1992).

---

[1]In 2022, the Code was amended to provide for electronic service. "Electronic Service shall be deemed complete on the date faxed or electronically submitted." 56 Ill. Adm. Code 5300.30(a), (d) (2022).

¶ 29    In the case at bar, the ALJ issued its ROD on July 22, 2020. As expressly stated on the memorandum of service, the ROD was served on Cook County, via first class mail, on July 23, 2020. On August 28, 2020, Cook County filed its written exceptions to the ROD. In response, Jones argued that the exceptions were untimely as the 30-day time period ended on August 26, 2020. The Commission agreed with Jones that the exceptions were untimely and issued its decision adopting the ALJ's recommendation. The Commission requests dismissal of this appeal based on its determination that the exceptions were not timely filed, and Cook County argues that the Commission's finding was in error.

¶ 30    In its brief, Cook County acknowledged that the memorandum of service stated that the ROD was mailed on July 23, 2020. However, the envelope in which the ROD was mailed had postage printed on it with a Pitney Bowes postage meter, which was dated July 24, 2020, and the United States Postal Service cancellation date on the envelope was dated July 27, 2020. Cook County asserted that it received the ROD on August 3, 2020. As such, Cook County contends that the exceptions filed on August 28, 2020 were timely and within the 30-day time period based on the cancellation date.

¶ 31    Essentially, the Commission contends that service was deemed completed on July 27, 2020, four days after the date of mailing as reflected on the memorandum of service, whereas Cook County contends that service was deemed complete on July 31, 2020, four days after the cancellation date on the envelope. In other words, regardless of the date on the memorandum of service, Cook County urges that the postage cancellation date controls.

¶ 32    The rules set forth above have previously been interpreted by this court in *Cigna*, 2020 IL App (1st) 190620, where the issue was whether the petitioners timely filed exceptions to the ROD. Specifically, the petitioners there contended that the mailing date on the envelope, rather than that

on the memorandum of service, should be used to calculate when the 30-day period to file exceptions began and that the date service was deemed complete cannot fall on a weekend day. *Id.* ¶¶ 26-27. We find that court's interpretation of these rules persuasive here.

¶ 33    First, the court found that the time for mailing did not constitute a "period of time" within the meaning of the rules, such that the provision excluding Saturdays, Sundays, and legal state holidays from the computation of time periods that are less than seven days was not applicable. *Id.* ¶ 29. The court concluded that "service" is one of several things that can trigger the commencement of a "period of time," but it is not itself a "period of time." *Id.* Further, the last sentence in the rule providing computation of time for service "makes clear that receipt of service is the starting point, not an ending point, to a time period." *Id.*

¶ 34    Significantly, the court next determined that the word "deemed," in the current version of the regulation, is " 'absolute.' " *Id.* ¶ 30 (quoting *Gemini Services, Inc. v. Martin*, 141 Ill. App. 3d 17, 19 (1986)). The court noted that, in a previous version, the drafters' use of the word "presumed" suggested that the presumption of service could be negated by proof of actual receipt. *Id.* (citing *Gemini*, 141 Ill. App. 3d at 20). The court concluded that because the same language—that receipt of service "shall be deemed to occur on the fourth day after mailing"—appeared twice in the Commission's rules, the Commission clearly intended to firmly fix the date of service. *Id.*

¶ 35    The reasoning in *Cigna* has found support in *Jackson v. TSA Processing Chicago, Inc.*, 2021 IL App (2d) 200769. Though factually inapposite, the court in *Jackson* adopted the *Cigna* court's reasoning in determining whether receipt of service was deemed complete four days after mailing or whether, instead, receipt was merely presumed. *TSA* noted that the Commission's use of the word "deemed" indicated an irrebuttable presumption. *Id.* ¶ 18 (quoting *Cigna*, 2020 IL App (1st) 190620, ¶ 35).

¶ 36    Notably, the court in *Cigna* did not expressly consider the significance, if any, of the mailing date on the envelope, as opposed to the date on the memorandum of service. It was unnecessary to reach that precise issue because, regardless of which date was used, the petitioners' exceptions were untimely. *Cigna*, 2020 IL App (1st) 190620, ¶¶ 26-27. That issue is squarely presented here.

¶ 37    Cook County does not appear to take issue with the fact that service is deemed complete four days after mailing; rather, Cook County contends that the most recent date on the envelope should be considered the mailing date. However, the relevant rules provide for only one method of proving service of the document: A statement from the individual making service, "specifying the manner and date of such service." 56 Ill. Adm. Code 5300.30 (2022). The memorandum of service serves this purpose. We will not read into the rules other options for proving the manner and date of service where there is none to be found. In the same manner as the Commission provided for service by mail, it could have provided that service is deemed complete four days from the date postmarked. It did not do so, and we believe for good reason. Besides, we would find it illogical that the Commission, when referring to "four days after mailing" in the Service of Pleadings section of the Code, meant something different when referring to "the fourth day after mailing" in the Computation of Time section of the Code. To read the computation section as Cook County advocates would render the service of pleadings section meaningless, as the four days for completion of service would have absolutely no effect. In fact, section 5300.30(c), "Effective Date of Service by Mail," would be entirely unnecessary. 56 Ill. Adm. Code 5300.30(c) (2022).

¶ 38    As it happens, in this case, the post office cancellation mark on the envelope bearing the ROD was clearly legible. It is, however, not so uncommon for postmarks to be blurred, missing, or illegible. In fact, it was the inconsistency in the quality of postmarks that prompted our supreme

court to amend its Illinois Supreme Court Rule 12(b) (eff. July 1, 2017) to reject postmarks as proof of service, requiring, instead, the filing of a certificate of service, much like here with the Commission's requirement that a memorandum of service accompany the mailing of the ROD. See *People v. Tolbert*, 2021 IL App (1st) 181654, ¶ 20; see also *Huber v. American Accounting Ass'n*, 2014 IL 117293, ¶ 13 (stating that in response to problems with illegible postmarks and, in some cases, delays in affixing postmarks, in 1981, the court eliminated postmarks as a method of proof). Notably, the Commission affixed the Pitney Bowes indicia on the envelope on Friday, July 24, 2020. The post office cancellation date on the envelope was Monday, July 27, 2020, which reflects the date the envelope was actually mailed by the post office. In *Tolbert*, we held that our supreme court's rejection of postmarks as proof of service was intended to "eliminate the need to debate the question of timeliness on those occasions when the postmark was not legible. It was not the case that all postmarks were illegible." *Id.* We believe that the use of a certificate required by Rule 12(b), like the memorandum of service here, avoids any uncertainty attendant to postmarks. We recognize that *Tolbert* is a criminal case; however, we believe that the very same considerations are at play in the context of the Commission's rules regarding proof of service.

¶ 39    Furthermore, if the Commission wanted to allow for the date on the memorandum of service to be rebutted, it would have explicitly provided for that or kept the word "presumed" in the rule. Accordingly, the only date that is significant in the determination of when a time period begins is the date reflected on the proof of service.

¶ 40    Practically speaking, this conclusion is also the most logical in an instance such as this. The Commission's ROD is mailed to all interested parties, and each party has the opportunity to file exceptions to the ROD. It would be confusing and problematic, not only for the parties, but also for the Commission, if each party's time period for filing exceptions was dependent upon

various mailing dates found on the envelope, rather than a fixed date as the Commission intended. We are mindful that the filing of exceptions is the jurisdictional step in these proceedings.

¶ 41    As such, we do not believe that any dates other than the date reflected on the memorandum of service are relevant to the determination of when service was deemed complete. The Commission's administrative rules are clear that service is deemed complete four days after the date of mailing, the proof of service fixes the date of mailing, and the time period for filing the exceptions began the day after service was deemed complete. Here, the proof of service unambiguously stated that the ROD was posted for delivery to Cook County, to which it was properly addressed, on July 23, 2020. Accordingly, we agree with the Commission that service was effectively complete as of July 27, 2020 and the 30-day time period for filing exceptions began on July 28, 2020 and ended on August 26, 2020, which was not a Saturday, Sunday, or legal State holiday. Thus, Cook County's exceptions filed on August 28, 2020 were, in fact, untimely.

¶ 42    Moreover, Cook County is aware of the rules and received the memorandum of service along with the ROD. Cook County should have known that the date listed on the memorandum of service, July 23, 2020, was the date of mailing for purposes of service and that the time period for filing exceptions would begin four days from that date, regardless of the date that the ROD was actually received. It was in Cook County's best interest to heed the date on the memorandum of service in calculating the time remaining to file its exceptions.

¶ 43    Even if knowledge of the rules cannot be imputed, the differing dates on the memorandum of service and the postmark cancellation should have prompted Cook County to act. Nothing precluded Cook County from filing a motion for an extension of time to file its exceptions. See 775 ILCS 5/8A-103(H) (West 2020) (providing that motions for extensions of time must be heard by the full Commission or a three-member panel and the filing deadline may be extended until the

Commission is able to consider the motion). Cook County did not do so. Thus, regardless of any postal service issues, Cook County's failure to file timely exceptions was avoidable.

¶ 44    Finally, we note that the Commission explicitly established a rule providing that failure to file exceptions would result in a failure to exhaust all administrative remedies. This evinces a clear intention to codify the doctrine of exhaustion. See *Castaneda v. Illinois Human Rights Comm'n*, 132 Ill. 2d 304, 320-21 (1989) (finding that several sections of the Act indicated that the legislature intended for aggrieved parties to exhaust all administrative remedies before seeking judicial review). Therefore, to allow review of the Commission's ROD without timely filing exceptions under these circumstances would circumvent the Commission's authority.

¶ 45    As such, we find that Cook County's objections were filed more than 30 days after receipt of service of the ROD. See 775 ILCS 5/8A-103(A) (West 2020). In accordance with the Act, the Commission was required to adopt the ALJ's ROD without further review, and Cook County failed to exhaust all administrative remedies.

¶ 46                              B. Exceptions to the Exhaustion Requirement

¶ 47    Nonetheless, Cook County argues, in the alternative, that the question of statutory and case law interpretation serves as an "exception" to the exhaustion doctrine and that "even if the Sherriff failed to exhaust its administrative remedies, this court would nonetheless have jurisdiction over this appeal."

¶ 48    Our supreme court has recognized certain exceptions to the doctrine of exhaustion of administrative remedies. A party may seek judicial review without exhausting all administrative remedies where (1) a statute, ordinance, or rule is attacked as unconstitutional on its face, (2) multiple administrative remedies exist and at least one is exhausted, (3) the agency cannot provide an adequate remedy or it is patently futile to seek relief before the agency, (4) no issues of

fact are presented or agency expertise is not involved, (5) irreparable harm will result from another pursuit of administrative remedies, or (6) the agency's jurisdiction is attacked because it is not authorized by statute. *Castaneda*, 132 Ill. 2d at 308-09.

¶ 49 We do not find any of these exceptions implicated in the appeal before us for two reasons. First, we have addressed the merits of Cook County's timeliness argument, and it has been rejected. Second, all other claims of error—*i.e.*, challenges to the ALJ's findings of fact and conclusions of law—are issues of fact and involve agency expertise.

¶ 50 Although our review of the issue here on appeal requires statutory construction, we are not inclined to characterize the same as an exception to the administrative remedies doctrine. Therefore, we conclude that Cook County failed to exhaust all administrative remedies prior to seeking judicial review, and this appeal must be dismissed for that reason.

¶ 51 III. CONCLUSION

¶ 52 For the reasons stated, we grant the motion to dismiss and dismiss this appeal for lack of jurisdiction.

¶ 53 Appeal dismissed.

¶ 54 JUSTICE ELLIS, dissenting:

¶ 55 I respectfully dissent. The rule the majority crafts—that the date the Commission's ROD was mailed is conclusively determined by the proof-of-service prepared by the Commission— would be a perfectly good rule of procedure, for the reasons the majority gives. It would remove any uncertainty caused by reliance on postmarks, which may be illegible or unavailable if the envelope is discarded. And it would provide a uniform rule of service to all interested parties affected by the Decision. If I were a member of the Commission, I might vote to adopt that rule.

¶ 56    But we are judges interpreting a rule, and the Commission did not adopt that rule. The judiciary should not imply one, particularly here, when the consequences of doing so are to create a jurisdictional bar, denying a litigant its day in court.

¶ 57    The majority references Illinois Supreme Court Rule 12(b) (eff. July 1, 2017), which governs service in trial and reviewing courts. But the language of that rule is materially different. That rule leaves absolutely no room for doubt on how service is proved: "Service is proved *** in case of service by mail *** by certification under section 1-109 of the Code of Civil Procedure of the person who deposited the document in the mail ***." Ill. S. Ct. R. 12(b)(5) (eff. July 1, 2017).

¶ 58    That rule is crystal clear—the way you prove service by mail is through the certification, sometimes known as the proof of service. So any argument that the postmark plays a role in proving when service was effectuated is firmly rejected by the plain language of Rule 12(b).

¶ 59    In contrast, the Commission's administrative rule at issue here says nothing of that nature. The majority relies on the rule's language that "[s]ervice by mail shall be deemed complete four days after the document is mailed, properly addressed, and posted for delivery to the Person to be served." 56 Ill. Adm. Code § 5300.30(c) (2022). But that language says nothing about how you prove the date on which "the document [was] mailed." The majority is correct that the word "deemed" is mandatory and conclusive, but that language is irrelevant for our purposes. The only thing mandatory about this language is that, once the document is mailed, it is conclusively deemed to have arrived in the hands of the recipient four days later. The relevant question here is when do we start counting those four days—when is the document considered "mailed" and, more to the point, *how does one prove* that it was mailed on that date? The rule offers no answer.

¶ 60    The majority says that, because a proof of service is mentioned in the rule, the proof of service must be the only permissible way to prove service. But nothing in the rule says it is

conclusive. It is evidence, to be sure, but to hold (as the majority does) that this evidence is conclusive, that no other evidence can be considered, is to read language that is not there.

¶ 61    Of course, the Commission could have made the proof of service conclusive evidence of service, disregarding any other evidence such as a postmark. The Supreme Court did that very thing in Rule 12(b)—but it made no bones about that fact, making it clear to all who read the rule exactly how "[s]ervice is proved"—by the "certification" or proof of service accompanying the mailing. Ill. S. Ct. R. 12(b)(5) (eff. July 1, 2017).

¶ 62    Or the Commission could have simply adopted Rule 12(b), as the Department of Revenue did. See 86 Ill. Adm. Code 200.115(a) (2020) ("Proof of service shall be established in accordance with Subsection (b) of Illinois Supreme Court Rule 12.").

¶ 63    Other agencies, in various ways, have directly addressed the issue of what kind of evidence they will accept to prove mailing or service. The Department of Financial and Professional Regulation adopted a rule that considered the sworn proof of service to be presumptive evidence of service, while leaving open the possibility that other evidence might rebut that presumption. See 68 Ill. Adm. Code 1110.60(b) (2019) ("In the absence of evidence to the contrary, the date shown on the proof of service shall be deemed the date of service.").

¶ 64    The Department of Employment Security provides that a postmark, if available, is *conclusive* evidence of service, but otherwise the date provided on the agency's document will presumptively control as the date of mailing. See 56 Ill. Adm. Code 2720.10(d) (2019) ("The date on the document shall be rebuttable evidence that it was mailed on that date; a postmark placed on the envelope by the U.S. Postal Service shall be conclusive evidence of the date of mailing ***.").

¶ 65    The Department of Natural Resources provides for various methods of proving service, including the certification or any other "satisfactory" evidence, but leaving the ultimate question of proof of service to the hearing officer. See 17 Ill. Adm. Code 3730.105(f) (2022).

¶ 66    Here, in contrast, the Commission chose to adopt a rule that is silent on how a litigant may prove when a document sent by U.S. mail was "mailed." So the requirement that service is "deemed complete" four days after that mailing leaves a litigant with no indication of when that four-day period begins—and, more to the point, no indication of what kind of proof of "mailing" will be acceptable to the Commission.

¶ 67    A litigant would be well within her rights, if she had a legible postmark on the envelope, to believe that the postmark (or in this case, a postage cancellation mark) is about the best evidence of "mailing" one could possibly possess. What evidence could be better? And absent any language in the rule telling her differently, she would be fully justified in relying on the date on that postmark as the date of "mailing," starting a clock of four days, after which time the document will be "deemed" to have been "served" on her. All of that thinking would be entirely consistent with the plain language of the Commission's rule. The majority, however, would judicially insert language that the proof of service is the exclusive and conclusive proof of "mailing." That is not only unreasonable and improper but unfair to litigants.

¶ 68    The fact that the litigant here was an arm of county government, represented by counsel, makes no difference. The majority's rule will apply to *pro se* litigants as well, who would presumably be surprised to learn that a postmark is not perfectly acceptable—indeed, the best— evidence of when a document was "mailed." And the Commission's rule here is not the only administrative rule in Illinois that is silent as to how one proves when a document was mailed. See, *e.g.*, 11 Ill. Adm. Code 1700.80 (1994) (Department of Lottery).  If the majority's reasoning

here is applied to those other rules—and there is no reason why it would not be—the potential for unfairness and unjust results will multiply by several factors.

¶ 69    If a governmental unit chooses to eliminate postmarks as evidence of mailing, it is perfectly within its rights to do so. But it must let the public in on the secret. Fundamental fairness demands that it *tell* litigants that it will not accept postmarks as evidence of service, either by excluding it as a method of proof, as the supreme court did in Rule 12(b), or by otherwise delineating what it will and will not accept as proof of service, as these other agency rules referenced above did.

¶ 70    If, on the other hand, that governmental entity remains silent on the question, like the Commission's rule here, then the answer is not to judicially impose the elimination of postmarks, no matter how good an idea it might seem. Rather, in the absence of any language in the rule to the contrary, the matter of when the document was "mailed" should remain open to proof.

¶ 71    The County has that proof here, as the majority acknowledges. It should be allowed to present that proof to demonstrate when, in fact, the ROD was "mailed," after which service is "deemed complete" in four days. Had the County been permitted to do so here, it almost surely would have prevailed on the service question and been allowed to proceed with its objections to the ROD. Instead, it was denied its hearing based on language in a rule that does not exist.

¶ 72    I would deny the motion to dismiss this appeal, vacate the Commission's decision, and remand for further proceedings, starting with a consideration of the timeliness of the County's objections to the ROD.

*Cook County Sheriff Department of Corrections v. Illinois Human Rights Comm'n*,
**2022 IL App (1st) 210174**

| | |
|---|---|
| **Decision Under Review:** | Petition for review of order of Illinois Human Rights Commission, No. 09-0223. |
| **Attorneys for Appellant:** | Kimberly M. Foxx, State's Attorney, of Chicago (Kristina Gregory, Assistant State's Attorney, of counsel), for petitioner. |
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Maura Forde O'Meara, Assistant Attorney General, of counsel), for respondents Illinois Human Rights Commission and Illinois Department of Human Rights.<br><br>No brief filed for other respondent. |